**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| ERFINDERGEMEINSCHAFT UROPEP GbR, | |
| Plaintiff, | Civil No.  2:15-cv-01202 |
| v. | |
| ELI LILLY AND COMPANY, and BROOKSHIRE BROTHERS, INC., | **JURY TRIAL DEMANDED** |
| Defendants. | |

**ERFINDERGEMEINSCHAFT UROPEP GbR'S**
**RESPONSE TO DEFENDANTS' MOTION TO DISMISS**

## TABLE OF CONTENTS

I.       INTRODUCTION ....................................................................................................1

II.      LEGAL STANDARD..............................................................................................5

III.     ARGUMENT ...........................................................................................................7

      A.       UroPep's Complaint States a Plausible Claim for Relief Against
          Brookshire for Direct Infringement of the '124 Patent..........................................7

      B.       UroPep's Complaint States a Plausible Claim for Relief Against
          Brookshire for Indirect Infringement of the '124 Patent. ...................................11

IV.      CONCLUSION......................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acorda Therapeutics, Inc. v. Apotex, Inc.*,
  No. 2:07-cv-04937 (D.N.J. Jul. 2, 2010) ...........................................................................8, 9

*Affinity Labs of Texas, LLC v. Toyota Motor N. Amer.*,
  2014 WL 2892285 (W.D. Tex. May 12, 2014) ......................................................................13

*Akamai Technologies v. Limelight Networks, Inc.*,
  2015 WL 4760450 (Fed. Cir. Aug. 13, 2015).........................................................................4

*Am. Vehicular Scis. LLC v. Mercedes-Benz U.S. Int'l, Inc.*,
  No. 6:13-cv-00307 (E.D. Tex. Feb. 7, 2014) .......................................................................13

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...............................................................................................................5, 6

*Baker v. Putnal*,
  75 F.3d 190 (5th Cir. 1996) ......................................................................................................6

*Bell Atl. Corp. v. Twombly*,
  550 U.S 544 (2007)....................................................................................................................5

*In re Bill of Lading Transmission and Processing System Patent Lit.*,
  681 F.3d 1323 (Fed. Cir. 2012)......................................................................5, 6, 7, 11, 12

*Bristol-Myers Squibb Co. v. Apotex, Inc.*,
  No. 3:10-cv-05810 (D.N.J. Mar. 28, 2013) ........................................................................8, 9

*Content Guard Holdings, Inc. v. Google Inc.*,
  Dkt. No. 2:14-cv-0061 (E.D. Tex. Mar. 30, 2015) .................................................................6

*Eli Lilly & Co. v. Teva Parenteral Medicines, Inc.*,
  No. 1:10-cv-01376 (S.D. Ind.) ..............................................................................2, 3, 4, 5, 9

*Gilead Sciences, Inc. v. Merck & Co.*,
  No. 5:13-cv-04057 (C.D. Cal. May 1, 2015).......................................................................8, 9

*Hoffman-LaRoche Inc. v. Apotex Inc.*,
  No. 2:07-cv-04417 (D.N.J. May 7, 2010).............................................................................8, 9

*InMotion Imagery Technologies*,
  2012 WL 3283371, at *3 (E.D. Tex., Aug. 10, 2012) .................................................6, 11, 15

*Jones v. Bock*,
   549 U.S. 199 (2007) .........................................................................................................6

*Limelight Networks, Inc. v. Akamai Technologies, Inc.*,
   (2014) (No. 12-786), 2014 WL 1319146, at *3 (U.S.) ...............................................4

*Lochner Technologies v. AT Labs Inc.*,
   2012 WL 2595288, at *3 (E.D. Tex., July 5, 2012).................................................6, 11

*Lormand v. US Unwired, Inc.*,
   565 F.3d 228 (5th Cir. 2009) ..........................................................................................6

*McZeal v. Sprint Nextel Corp.*,
   501 F.3d 1354 (Fed.Cir.2007)......................................................................................12

*Morgan v. Hubert*,
   335 F. App'x 466 (5th Cir. 2009) .................................................................................15

*MSD Consumer Products, Inc. v. Par Pharmaceutical*,
   No. 3:10-cv-04837 (D.N.J. Sept. 20, 20101) .............................................................8, 9

*Norman IP Holdings, LLC v. Chrysler Group LLC*,
   No. 6:13-cv-00278 (E.D. Tex. Mar. 5, 2014) ...........................................................13, 14

*In re So. Scrap Material Co.*,
   541 F.3d 584, 587 (5th Cir. 2008) ...............................................................................15

*Tierra Intelectual Borinquen, Inc. v. ASSU Computer et al.*,
   2014 WL 894805 (E.D. Tex. Mar. 3, 2014) ...............................................................13

*U.S. Ethernet Innovations, LLC v. Cirrus Logic, Inc.*,
   2013 WL 8482270 (E.D. Tex. Mar. 6, 2013) .............................................................13

*Warner-Lambert Co. v. Apotex Co.*,
   316 F.3d 2348 (Fed. Cir. 2003)....................................................................................10

*Whiddon v. Chase Home Fin.*,
   666 F.Supp. 2d 681 (E.D. Tex. 2009) ...........................................................................7

Defendant Brookshire Brothers, Inc. ("Brookshire") has moved to dismiss the Complaint for failure to state a claim for direct infringement because it says that a pharmacy "does not and cannot administer drugs" to patients.  Motion, Dkt. No. 27, at 1.  It also moves to dismiss the claim for indirect infringement on the grounds that there is no allegation in the Complaint that it "specifically and intentionally encourages" its customers to take Cialis® to treat BPH as claimed in the asserted '124 Patent.  Brookshire is decidedly incorrect on the first point—as numerous district court cases, and recent winning arguments made by its co-defendant Eli Lilly & Company ("Lilly") in another lawsuit, make clear.  It also is wrong on the second point because the Complaint more than adequately alleges that Brookshire is an indirect infringer.

## I.      INTRODUCTION

UroPep filed this lawsuit on July 1, 2015, alleging that Lilly and Brookshire infringe U.S. Patent No. 8,791,124 ("the '124 Patent") through the sale of Cialis® for treatment of benign prostate hyperplasia ("BPH").  Exemplary claim 1 of the '124 Patent recites, in pertinent part, "[a] method for prophylaxis or treatment of [BPH] comprising administering to a person in need thereof an effective amount" of a PDE V inhibitor.  Specifically with respect to Brookshire, the Complaint alleges that Brookshire infringes both directly and indirectly.

Brookshire is a direct infringer, for example, when its pharmacies use the method of treatment claimed in the '124 Patent by administering Cialis® for treatment of BPH.  *See* Compl. at ¶ 31 ("Brookshire Brothers directly infringes [by] using . . . methods covered by one or more claims of the '124 Patent, including Cialis® for treatment of BPH…"); *see id*. at ¶ 28 ("Eli Lilly indirectly infringes the '124 Patent, as provided in 35 U.S.C. § 271(b), by inducing infringement by others, such as distributors, sales representatives, ***pharmacies***, insurers,

physicians, and/or consumers, in this District and elsewhere in the United States. ***For example, pharmacies and physicians directly infringe.***") (emphasis added).

Brookshire is an indirect infringer because it "induces [direct] infringement by consumers within this District" by selling them Cialis® for treatment of BPH. *Id*. at ¶¶ 31-32. In particular, Brookshire "provid[es] instructions, documentation, and/or other information regarding the use of Cialis® for treatment of BPH, including notices required by the Food and Drug Administration, advertising, marketing materials, and prescribing information to consumers [that] induces consumers to use Cialis® for treatment of BPH in the way that Brookshire Brothers intends, in order to directly infringe the '124 Patent." *Id*. at ¶ 33. The Complaint also alleges that, to the extent that Brookshire Brothers "has performed and continues to perform these affirmative acts" after the filing of the Complaint, it has done so with knowledge of the '124 Patent. This is sufficient under the law to adequately plead claims for direct and indirect patent infringement.

Nevertheless, a fundamental issue raised by Brookshire in this motion is the scope of what it means to "administer" a treatment to a patient in need of that treatment. In Brookshire's view, a "pharmacy does not and cannot administer drugs to patients." MOTION, Dkt. No. 27 at 1. That view is at odds with recent views expressed by co-defendant Eli Lilly—represented by the same law firm now representing Brookshire, no less—and greatly undermines Brookshire's present motion. Earlier this year, Lilly tried a Hatch-Waxman patent infringement lawsuit against multiple generic manufacturers in the Southern District of Indiana. Eli Lilly asserted infringement of a patent that was directed to a method of treating lung cancer and mesothelioma by co-administering folic acid (which was taken orally by the patient) and a chemotherapy agent, permetrexed (which was infused by the physician). Complaint, *Eli Lilly & Co. v. Teva*

*Parenteral Medicines, Inc.*, No. 1:10-cv-01376, Dkt. No. No. 1 (S.D. Ind. Oct. 29, 2010).  The

primary area of dispute in that infringement trial was whether physicians infringed the patent by

directing or controlling the administration of folic acid to patients.  Findings of Fact &

Conclusions of Law, *Eli Lilly & Co.*, No. 1:10-cv-01376, Dkt. No. 419 at 2 (S.D. Ind. Aug. 25,

2015).

In its pre-trial brief, Eli Lilly articulated a broad theory of the term 'administer' and

argued stridently that the physician was a direct infringer because the physician administered

both the folic acid and the permetrexed, even though it was the patient who took the folic acid

outside of the presence of the physician:

> The evidence will show there is a single direct infringer—the physician—who
> 'administers' the entire permetrexed treatment regimen to her patient.  Of course,
> the definition of 'administer' includes physically placing something on or in a
> patient's body.  But the term 'administer' is not *limited* to that physical act.  To
> the contrary, ***the well-established ordinary and customary meaning of
> 'administer' in the field of medical oncology*** encompasses not only placing a pill
> in the patient's mouth but also ***treating the patient by prescribing or instructing
> the patient to take the pills*** with a chemotherapy regimen . . .

Plaintiff Eli Lilly & Co.'s Pre-Trial Br., *Eli Lilly & Co.*, No. 1:10-cv-01376, Dkt. No. 369 at 2,

11 (S.D. Ind. Jan. 15, 2015) (emphasis added).

While the excerpt above referenced a specific practice area—"medical oncology"—Lilly

acknowledged that the term "administer" has the same general meaning in other medical fields

and was broad enough to include determining and directing treatment.  *See id.* at 11 ("The term

'administer' is generally used by doctors to mean not just the act of inserting a needle, pushing

the plunger of a syringe, or putting a pill in a person's mouth, ***but also determining and

directing a patient's treatment***.  Who performs the physical act of putting a drug into a patient's

body is irrelevant from a medical standpoint; what matters is that the patient receives the

appropriate therapy.").  The point was, as Lilly articulated it, that "the physician is legally

responsible for that administration because the physician directs and controls it.  The law has long recognized that a party can be found to infringe a method claim if they directed or controlled the performance of any steps they did not personally perform." *Id*. at 3.  The same can be said of pharmacists, who are highly regulated by the Texas State Board of Pharmacy. *See*, *e.g.*, https://www.pharmacy.texas.gov/consumer/broch4.asp (last visited Oct. 27, 2015) (describing how "the pharmacists is **required** to screen, or review, the prescription . . . [to] screen[] for any potential problems that could affect the patient's health.") (emphasis added).

After an analysis of the current state of divided infringement law post-*Akamai Technologies v. Limelight Networks, Inc.*, 2015 WL 4760450 (Fed. Cir. Aug. 13, 2015), the Court agreed with Lilly.[1]  In particular, it concluded that the generic manufacturers were liable for indirect infringement because the physicians were direct infringers, no matter what the scope of the term *administer* was: "Although the parties present extensive arguments as to whether or not this constitutes the physician administering the folic acid, whether or not this satisfies the

---

[1]  This *Akamai* decision from the Federal Circuit followed a remand from the Supreme Court. Interestingly, Eli Lilly filed an *Amicus* Brief at the Supreme Court in the *Akamai* case that also bears on the issues in this motion.  That brief, signed by the same Assistant General Patent Counsel who provided a Declaration in Lilly's later filed Motion to Sever and Transfer (Dkt. No. 28), argued that "[s]o long as all of the steps of the method are performed, and there is 'active inducement' of that performance by another, who may or may not be practicing any of the method steps himself, section 271(b) liability may be found.  *Amicus* Brief of Lilly, *Limelight Networks, Inc. v. Akamai Technologies, Inc.* (2014) (No. 12-786) 2014 WL 1319146, at *3 (U.S.).  Directing the inquiry to the actions of the inducer rather than those induced, is completely in line with giving patentees a remedy when pursuing claims against direct infringers is problematic." *Id*.  "Method of treatment claims routinely and sometimes necessarily present divided infringement issues . . . because a physician will be required to diagnose the disease and write a prescription for a patient in need thereof, a pharmacists will fill the prescription, and a patient or another healthcare provider will administer the drug . . . ***Thus, for method of treatment claims it is not uncommon that to practice all the steps, a doctor, nurse, laboratory technician, pharmacist and patient may be needed***." *Id*. at *9-10 (emphasis added).

definition of 'administer' is not relevant.  ***What is relevant is whether the physician sufficiently directs or controls the acts of the patients in such a manner as to condition participation in an activity or receipt of a benefit . . . upon the performance of a step of the patented method and establishes the manner and timing of the performance.***"  Findings of Fact & Conclusions of Law, *Eli Lilly & Co.*, No. 1:10-cv-01376, Dkt. No. 419 at 8 (S.D. Ind. Aug. 25, 2015) (emphasis added).  Such direction or control, giving rise to direct infringement liability, may also be exercised by a pharmacist for all the same reasons argued by Lilly.

The position that Brookshire now takes in its motion to dismiss is antithetical to the argument Lilly made two months ago, using the same law firm, when it was the patentee and desired a broader—and correct—application of what it means to "administer."  Fundamentally, there is no difference between the role a physician plays and the role a pharmacist plays as it relates generally to direct infringement of a method of treatment claim.  For this reason alone, and as further articulated below, Brookshire's arguments necessarily fail.

## II.    LEGAL STANDARD

Under Rule 8(a) of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S 544, 545 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 684-685 (2009).  In other words, a complaint must plead enough factual matter that when taken as true, states a claim to relief that is plausible on its face.  *See In re Bill of Lading Transmission and Processing System Patent Lit.*, 681 F.3d 1323, 1331 (Fed. Cir. 2012). "[D]etermining whether a complaint states a plausible cause of action is a context-specific task

that requires the court to rely on its judicial experience and common sense." *Id.* (citing

*Ashcroft*, 556 U.S. at 679).

A motion to dismiss a complaint for failure to state a claim is governed by regional

circuit law. *In re Bill of Lading Transmission & Processing System Patent Litig.*, 681 F.3d

1323, 1331 (Fed. Cir. 2012).  "In the Fifth Circuit, motions to dismiss under Rule 12(b)(6) are

viewed with disfavor and rarely granted." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232

(5th Cir. 2009) (citing *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 (5th Cir.

2005)).  When reviewing a motion to dismiss, courts look only to the allegations in the

complaint to determine whether they are sufficient to survive dismissal. *See Jones v. Bock*,

549 U.S. 199, 215 (2007); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).  Those

allegations must be viewed in a light most favorable to the plaintiff, and all reasonable

inferences must be drawn in plaintiff's favor. *Content Guard Holdings, Inc. v. Google Inc.*,

Dkt. No. 2:14-cv-0061, Dkt. No. 158 at 1 (E.D. Tex. Mar. 30, 2015) (*citing Bowlby v. City of

Aberdeen*, 681 F.3d 215, 218 (5th Cir. 2012)).

Moreover "this requirement does not mean that the Plaintiff must prove itself at the

pleading stage." *InMotion Imagery Technologies*, 2012 WL 3283371, at *3 (E.D. Tex., Aug.

10, 2012) (Gilstrap, J.).  This Court has specifically held that "[f]ailing to allege pre-suit

knowledge of the patent is not a basis to dismiss Plaintiff's indirect infringement claims; as it

cannot be disputed that Plaintiff does sufficiently plead that the [Defendant] had knowledge of

the asserted patent for at least some time during the infringing period." *Id.* (emphasis added)

(citing *Lochner Technologies,* 2:11-cv-242, 2012 WL 2595288, at *3 (E.D. Tex., July 5,

2012)); *see also Bill of Lading,* 361 F.3d 1323, 1345-46 (Fed. Cir. 2012).  Even if a complaint

"does not explicitly plead facts to show that [the defendant] had a specific intent to induce

infringement, it is not necessary to provide detailed factual support for each and every element

of inducement." *Id.* (citing *Bill of Lading*, 681 F.3d at 1336) (internal quotations omitted). Finally, a court should not dismiss an action for failure to state a claim under Rule 12(b)(6) without giving the plaintiff an opportunity to amend.  *See, e.g., Whiddon v. Chase Home Fin.*, 666 F.Supp. 2d 681, 692 (E.D. Tex. 2009).

## III.   ARGUMENT

Brookshire makes two arguments in support of its motion to dismiss.  *First*, it says that UroPep's direct infringement claims against Brookshire do not state a plausible claim for relief because the allegations in the complaint are *solely* limited to *sales* of Cialis®, when the sole independent claim of the '124 patent is directed to a method of treatment.  *Second*, it says that UroPep's indirect infringement claims against Brookshire lack the necessary factual allegations of specific intent.  As explained below, neither of these arguments is persuasive.

### A.   UroPep's Complaint States a Plausible Claim for Relief Against Brookshire for Direct Infringement of the '124 Patent.

Claim 1 of the '124 Patent recites, in pertinent part, "[a] method for prophylaxis or treatment of benign prostatic hyperplasia [BPH] comprising administering to a person in need thereof an effective amount" of a PDE V inhibitor.  The Complaint alleges that Eli Lilly commits indirect infringement and Brookshire commits direct infringement of this claim (*i.e.*, administers) when Brookshire sells Cialis® for the treatment of BPH.  *See, e.g.,* COMPL., ¶¶ 28, 31. Specifically, because "administering" is a broad term, a pharmacy administers a treatment when it fills a prescription from a physician, provides the drug to a patient, together with instructions as to how often to take the drug and under what circumstances (*e.g.*, with food, with water, etc.). Brookshire's argument that UroPep cannot make that allegation in good faith is belied by the facts, the Eli Lilly case discussed above, and many decisions from other courts construing the term *administering* that have concluded otherwise.

In *Acorda Therapeutics, Inc. v. Apotex*, for example, the patent at issue was directed to a method of reducing somnolence in a patient receiving tizanidine therapy that included "administering to the patient a therapeutically effective amount of tizanidine."  No. 2:07-cv-04937, Dkt. No. 85 at 1 (D.N.J. Oct. 11, 2007) (*citing* U.S. Patent No. 6,455,557).  The district court in that case construed the claim term ***administering*** broadly to mean "***giving***, prescribing, ***dispensing***, dosing, self-dosing or taking."  *Acorda Therapeutics, Inc.*, No. 2:07-cv-04937, Dkt. No. 85 at 2 (D.N.J. Jul. 2, 2010) (emphasis added) (Ex. 1).  Accordingly, the Court concluded that the administering step could be fulfilled (and thus direct infringement committed) by any one of a physician, a pharmacist, or a patient.  *Id.*; *see also Bristol-Myers Squibb Co. v. Apotex, Inc.*, No. 3:10-cv-05810, Dkt. No. 142 at 31 (D.N.J. Mar. 28, 2013) (Ex. 2).  In *MSD Consumer Products, Inc. v. Par Pharmaceutical*, the claim at issue related to a method "for treating an acid-caused gastrointestinal disorder comprising the step of administering to a subject suffering from said disorder" a solid pharmaceutical composition.  No. 3:10-cv-04837, Dkt. No. 1 at 3 (D.N.J. Sept. 20, 20101) (*citing* U.S. Patent 6,699,885) (Ex. 3).  The district court in that case concluded that the term "administer" should be construed "according to its ordinary and customary meaning, consistent with the intrinsic record, which was "to mete out, dispense, or give remedially."  *MSD Consumer Products*, No. 3:10-cv-04837, Dkt. No. 107 at 1 (D.N.J. Oct. 16, 2013) (Ex. 3); *accord, Bristol-Myers Squibb Co.* No. 3:10-cv-05810, Dkt. No. 142 at 31 (D.N.J. Mar. 28, 2013) (Ex. 2).

In *Hoffmann-LaRoche Inc. v. Apotex Inc.*, the patent related to a method of treatment or prophylaxis of calcium metabolism disturbance or disease, and the court determined that ***administering*** in that case "stopped at the point the patient received the medication."  No. 2:07-cv-04417, Dkt. No. 175 at 3 (D.N.J. May 7, 2010) (Ex. 4).  And in *Gilead Sciences, Inc. v.*

*Merck & Co.*, another method of treatment case using the term administer, the Court concluded

that the term meant providing "a compound of the invention."  No. 5:13-cv-04057, Dkt. No. 140

at 5 (C.D. Cal. May 1, 2015) (Ex. 5).

 In each of the cases above—*Acorda Therapeutics*, *Bristol-Meyers Squibb Co.*, *MSD*

*Consumer Products*, *Hoffmann-LaRoche*, and *Gilead*—the term *administer* was construed in a

way that makes a pharmacy such as Brookshire a direct infringer.  (*See* Exs. 1-4).  The term

should be construed in the same way in this case.  And this standard meaning of "administer" is

precisely the one successfully advocated by Brookshire's present counsel on behalf of Eli Lilly

in the Hatch-Waxman case tried in the Southern District of Indiana earlier this year:

> The evidence will show there is a single direct infringer—the physician—who
> 'administers' the entire permetrexed treatment regimen to her patient.  Of course,
> the definition of 'administer' includes physically placing something on or in a
> patient's body.  But the term 'administer' is not *limited* to that physical act.  To
> the contrary, ***the well-established ordinary and customary meaning of
> 'administer' in the field of medical oncology*** encompasses not only placing a pill
> in the patient's mouth but also ***treating the patient by prescribing or instructing
> the patient to take the pills*** with a chemotherapy regimen . . .

Plaintiff Eli Lilly & Co.'s Pre-Trial Br., *Eli Lilly And Co.*, No. 1:10-cv-01376, Dkt. No.

369 at 2 (emphasis added); *id*. at 11 ("The term 'administer' is generally used by doctors to mean

not just the act of inserting a needle, pushing the plunger of a syringe, or putting a pill in a

person's mouth, ***but also determining and directing a patient's treatment***.  Who performs the

physical act of putting a drug into a patient's body is irrelevant from a medical standpoint; what

matters is that the patient receives the appropriate therapy."); *see* https://www.youtube.com

/watch ?v=_ml5MVyBlc8 (last visited Oct. 28, 2015) (video by the Texas State Board of

Pharmacy describing direction and control exercised by the pharmacist in the course of

preforming the Patient Counseling Requirements); *id*. at 17:51 – 18:33 ("I don't think we can

emphasize too often how important it is to counsel that patient.  This is the time the patient will

learn about the drug.  Hopefully learn that it is important to take those drugs. . . Besides the

compliance, besides correcting, checking for errors, and making sure the right medicine is [going

to] the right patient, just let them know that you care."); *id.* at 6:48-7:04 ("Pharmacists must

counsel on all new prescriptions . . . this would also include counseling on refills once a year.);

*id.* at 10:02-10:09 ("Written information is required to be given [to the patient] at the time of the

counseling at the window.").

There is no reasoned basis upon which Brookshire can distinguish Lilly's argument that a

***physician*** is a direct infringer from its allegation that it is ***implausible*** that pharmacies directly

infringe by dispensing and instructing patients on how to take drugs.  In light of the broad

meaning of "administer," there can be no dispute that Brookshire has been put on notice of the

allegations against it and UroPep has made a plausible claim for relief for direct infringement

against Brookshire.

The fallback argument that dismissal is appropriate because UroPep has limited its

allegations of direct infringement to ***sales*** of a product, rather than performance of the method, is

thus a strawman.  While the *Warner-Lambert* opinion Brookshire cites gives an example of the

different roles played by a pharmaceutical company as opposed to wholesalers and pharmacists,

Brookshire's description of the case is inaccurate: the Federal Circuit determined only "that there

[was] no evidence ***in the record*** that Apotex has directly practiced" the claimed method.  *See*

*Warner-Lambert Co. v. Apotex Co.*, 316 F.3d 2348, 1363 (Fed. Cir. 2003) (emphasis added).

The Federal Circuit did not pass upon whether pharmacists can administer a drug for treatment,

and it also did not hold that pharmaceutical companies or pharmacies *never* directly practice such

method claims, as Brookshire now suggests.  Accordingly, its contention that the *Warner-*

*Lambert* decision is "controlling and dispositive" is not correct.  MOTION, Dkt. No. 27, at 7.

Brookshire's arguments should be rejected.

### B.     UroPep's Complaint States a Plausible Claim for Relief Against Brookshire for Indirect Infringement of the '124 Patent.

According to Brookshire, to properly allege induced infringement the Complaint must

show that "Brookshire 'plausibly' knew that they were engaged in infringing action and a

showing that Brookshire 'specifically intended their customers to infringe.'"  MOTION, Dkt. No.

27 at 8 (citing *In re Bill of Lading*).  UroPep's complaint meets that standard; it states a plausible

claim for relief against Brookshire for indirect infringement of the '124 Patent because it

identifies a direct infringer; it adequately alleges knowledge of the '124 Patent; and it alleges the

specific intent of Brookshire to induce patients to take Cialis® for the treatment of BPH.

*First*, the Complaint identifies customers as direct infringers, such as the instances when

they administer the Cialis® to themselves.  *See, e.g.*, COMPL., Dkt. No. 1 at ¶ 32 ("Brookshire

Brothers indirectly infringes the '124 Patent, as provided by 35 U.S.C. § 271(b), by inducing

infringement by consumers within this District.  For example, Brookshire Brothers induces

infringement by selling Cialis® for treatment of BPH to consumers.").  *Second*, the Complaint

adequately alleges knowledge of the '124 Patent because it alleges that Brookshire's inducing

activities are ongoing, and thus alleges that Brookshire had knowledge at least at some time

during the infringing period.  *See id.* at ¶ 33 ("Brookshire Brothers has performed and continues

to perform these affirmative acts."); *see also InMotion Imagery Technologies*, 2012 WL

3283371, *3 (E.D. Tex., Aug. 10, 2012) (citing *Lochner Technologies,* 2:11-cv-242, 2012 WL

2595288, at *3 (E.D. Tex., July 5, 2012)).

*Third*, the Complaint alleges specific intent by Brookshire because its "pharmacy staff

offer wellness counseling and recommendations on medication management that induces

consumers to use Cialis® for treatment of BPH in the way that Brookshire Brothers intends." COMPL., Dkt. No. 1 at ¶ 34.  This includes "marketing, advertising, selling, distributing, and/or otherwise making available Cialis® for treatment of BPH [and] providing instructions, documentation, and/or other information regarding the use of Cialis® for treatment of BPH, including notices required by the Food and Drug Administration, advertising, marketing materials, and prescribing information to consumers induce consumers to use Cialis® for treatment of BPH in the way that Brookshire Brothers intends, in order to directly infringe the '124 Patent."  *Id*. at ¶ 33.

These allegations are more than enough under FED. R. CIV. P. 8 and the prevailing law to adequately plead a case for induced infringement: they state a "common sense" claim for infringement that is plausible on its face, and they put Brookshire on adequate notice of the claims against which it must defend.  *See In re Bill of Lading*, 681 F.3d at 1331; *see also McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1355–56 (Fed.Cir.2007) (patentee "need only plead facts sufficient to place the alleged infringer on notice as to what he must defend"); *see also* http://pi.lilly.com/us/Cialis®-pi.pdf  (visited Oct. 27, 2015) (the "indications and usage" information for Cialis® plainly states that "Cialis® is a phosphodiesterase 5 (PDE5) inhibitor indicated for the treatment of: erectile dysfunction (ED) (1.1)[;] the signs and symptoms of benign prostatic hyperplasia (BPH) (1.2)[; and] ED and the signs and symptoms of BPH (ED/BPH)(1.3).")

Brookshire makes much of the fact that there is no allegation that it "prepared, or assisted in preparing, any labeling or instructions for the use of Cialis® to treat BPH."  MOTION, Dkt. No. 27 at 8.  But it is not an excuse to say that it was just following orders.  In any event, Brookshire's statement is misleading because there is in fact an allegation in the Complaint that

Brookshire provided such instructions.  *See* COMPL. Dkt. No. 1 at ¶ 34.  Moreover, the cases

Brookshire cites do not stand for the proposition that UroPep must allege Brookshire actually

prepared or assisted in preparing the labeling and instructions to be liable for inducing

infringement, or that there must be some specific recitation of Cialis® in order to meet the

pleading standard.

In the *Tierra Intelectual* case, for example, the court concluded that there was no

plausible claim for inducement because defendant Office Max had not taken any further steps

beyond acting as an "engine of pure commerce" that did not advertise the infringing features or

instruct users on the infringing functionalities of the device.  *Tierra Intelectual Borinquen, Inc. v.

ASUS Computer et al.*, 2014 WL 894805, *6 (E.D. Tex. Mar. 3, 2014).  Similarly, the

inducement allegations were deficient in *Affinity Labs* because they were too generalized; there

was no way to tell whether Toyota's allegedly inducing activity related specifically to the

portable electronic device.  *Affinity Labs of Texas, LLC v. Toyota Motor N. Amer.*, 2014 WL

2892285, *7-8 (W.D. Tex. May 12, 2014).  The other cases on which Brookshire relies arise in

the same context: cases relating to complex electronic equipment and generalized instructions

passed down from the manufacturer to the reseller or retailer, without an adequate allegations of

inducement.[2]  By way of example, Brookshire's quotation from *Norman IP Holdings, LLC v.*

---

[2]   *See, e.g., U.S. Ethernet Innovations, LLC v. Cirrus Logic, Inc.*, 2013 WL 8482270, *4 (E.D.
Tex. Mar. 6, 2013) (patentee failed to alleged facts, even if true, that plausibly alleged
inducement because there was nothing beyond manufacturer's instructions); *Norman IP
Holdings, LLC v. Chrysler Group LLC*, No. 6:13-cv-00278, Dkt. No. 216 at 6 (E.D. Tex.
Mar. 5, 2014)  ("Further facts need to be alleged, to show that merely [providing instructions]
lead to direct infringement of the patents in suit."); *Am. Vehicular Scis. LLC v. Mercedes-
Benz U.S. Int'l, Inc.*, No. 6:13-cv-00307, Dkt. No. 77 (E.D. Tex. Feb. 7, 2014) ("AVS does
not allege that that 'detailed explanations, instructions, and information' directed customers
to act in an infringing manner.").

*Chrysler Group LLC* omits a subsequent parenthetical indicating that specific intent was

adequate because "intent relative to specific features of identified products was plead"—

precisely as UroPep has done here.  *See* No. 6:13-cv-00278, Dkt. No. 216 at 6 (E.D. Tex. Mar. 5,

2014) (citing *Patent Harbor, LLC v. DreamWorks Animation SKG*, 6:11-cv-299, Dkt. No. 486 at

10 (E.D. Tex. July 27, 2013); *see* MOTION, Dkt. No. 27 at 10-11.

   This case is not one where the accused product is part of a multi-component system and

the instructions given by the party accused of inducement may or may not relate to infringement.

Here, when the pharmacy at Brookshire provides Cialis® to a customer that has a prescription to

treat BPH, the *only* use by law for which Brookshire can provide it is the *infringing* use.

Moreover, the Texas State Board of Pharmacy requires that pharmacists counsel patients and

provide information on the drug that they are giving.  *See, e.g.*, https://www.pharmacy.

texas.gov/consumer/broch4.asp (last visited Oct. 25, 2015).  That is no doubt one of the reasons

why Brookshire touts on its website that it provides "[p]rofessional pharmacy solutions with a

personal approach," uses pharmacy experts who "deliver individualized advice and support," and

offers "wellness counseling and recommendations on medication management."  *See*. COMPL.,

Dkt. No. 1 at ¶ 34 (citing http://www.brookshire brothers.com/about-us/our-banners/brookshire-

brothers-pharmacy).  To believe Brookshire that these general statements about personal

approach, counseling, individualized advice, and recommendations on medication management

do not apply to its provision of Cialis® for treatment of BPH, is implausible and inconsistent

with its legal obligations.

   Even if Brookshire were right (which it is not), it still should not prevail.  "[I]t is not

necessary to provide detailed factual support for each and every element of inducement"—so

long as the allegations support an *inference* of inducement the motion should be denied.

*InMotion Imagery Technologies*, 2012 WL 3283371, *3 (E.D. Tex., Aug. 10, 2012).  In other

words, the standard "simply calls for enough facts to raise a reasonable expectation that

discovery will reveal evidence of the necessary claims or elements."  *Morgan v. Hubert*, 335 F.

App'x 466, 470 (5th Cir. 2009) (quoting *In re So. Scrap Material Co.*, 541 F.3d 584, 587 (5th

Cir. 2008)).  UroPep has more than met that burden here.

## IV.     CONCLUSION

        For the foregoing reasons detailed above, Brookshire's Motion to Dismiss (Dkt. No. 27)

should be denied.

Date: November 3, 2015                     Respectfully submitted,

                                           FISH & RICHARDSON P.C.

                                           By:   /s/ *Ahmed J. Davis*
                                                 Ruffin B. Cordell
                                                 Texas State Bar No. 04820550
                                                 Email:  cordell@fr.com
                                                 Ahmed J. Davis
                                                 Virginia State Bar No. 43982
                                                 Email:  davis@fr.com
                                                 Cherylyn Esoy Mizzo
                                                 DC Bar No. 990338
                                                 Email:  mizzo@fr.com
                                                 J. Wesley Samples
                                                 Oregon State Bar No. 121784
                                                 Email:  samples@fr.com
                                                 FISH & RICHARDSON P.C.
                                                 1425 K Street, NW, 11th Floor
                                                 Washington, DC 20005
                                                 Telephone:  (202) 783-5070
                                                 Facsimile:  (202) 783-2331

                                                 **ATTORNEYS FOR PLAINTIFF**
                                                 **ERFINDERGEMEINSCHAFT**
                                                 **UROPEP GbR**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that all counsel of record who are deemed to have

consented to electronic service are being served with a copy of this document via the Court's

CM-ECF system per Local Rule CV-5(a)(3).  Any other counsel of record will be served by

facsimile transmission and/or first class mail this same date.


 */s/ Ahmed J. Davis*
Ahmed J. Davis

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| ERFINDERGEMEINSCHAFT UROPEP GbR, | |
| Plaintiff, | Civil No.  2:15-cv-01202 |
| v. | |
| ELI LILLY AND COMPANY, and BROOKSHIRE BROTHERS, INC., | **JURY TRIAL DEMANDED** |
| Defendants. | |

**PROPOSED ORDER DENYING
BROOKSHIRE'S MOTION TO DISMISS**

Before the Court is Brookshire Brothers, Inc.'s Motion to Dismiss (Dkt. No. 27).  Having

considered the same, the Court is of the opinion that the Motion to Dismiss should be DENIED.

IT IS THEREFORE **ORDERED** that the Motion (Dkt. No. 27) is **DENIED** in its

entirety.