IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| ERFINDERGEMEINSCHAFT UROPEP GbR, | § § § | |
| *Plaintiff*, | § § | |
| v. | § § | Case No. 2:15-CV-1202-WCB |
| ELI LILLY AND COMPANY, and BROOKSHIRE BROTHERS, INC., | § § § § | |
| *Defendants*. | § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is the motion of defendant Eli Lilly and Company to Sever and Stay Claims Against Brookshire Brothers and to Transfer Venue to the Southern District of Indiana. Dkt. No. 28. The Court heard argument on the motion on February 11, 2016. See Dkt. No. 82 ("Hearing Transcript"). For the reasons set forth below, the motion is DENIED.

Also pending before the Court is the defendants' motion to Stay Proceedings Pending Rulings on Motion to Dismiss, Motion to Disqualify, and Motion to Sever and Transfer Venue to the Southern District of Indiana. Dkt. No. 57. That motion is DENIED.

## BACKGROUND

The plaintiff, Erfindergemeinschaft Uropep GbR ("UroPep"), has sued both Eli Lilly and Company ("Lilly") and Brookshire Brothers, Inc., ("Brookshire) for patent infringement. Lilly and Brookshire are closely aligned in this case. Lilly has agreed to indemnify Brookshire for any damages assessed against it, and the two share common counsel. In its complaint, UroPep charges both defendants with directly and indirectly infringing U.S. Patent No. 8,791,124 ("the '124 patent").

Specifically, the complaint alleges that Lilly "directly infringes and/or induces infringement of the '124 patent by making, using, selling, offering for sale, and/or importing into the United States products and/or methods covered by one or more claims of the '124 patent, including Cialis for treatment of BPH." Complaint Dkt. No. 1, at ¶27. The complaint alleges that Lilly indirectly infringes the '124 patent "by inducing infringement by others, such as distributors, sales representatives, pharmacies, insurers, physicians, and/or customers, in this District and elsewhere in the United States. For example, pharmacies and physicians directly infringe." Id. ¶28.

The complaint alleges that Brookshire directly infringes or induces infringement of the '124 patent "by making, using, selling, offering for sale, and/or importing into the United States products and/or methods covered by one or more claims of the '124 Patent, including Cialis for treatment of BPH, such as when Brookshire Brothers sells Cialis for treatment of BPH." Id. ¶31. The complaint further alleges that Brookshire induces customers to use Cialis for treatment of BPH by "1) marketing, advertising, selling, distributing, and/or otherwise making available Cialis for treatment of BPH; 2) causing others to market, advertise, sell, distribute and/or make available Cialis for treatment of BPH; and/or 3) providing instructions, documentation, and/or other information regarding the use of Cialis for treatment of BPH, including notices required by the Food and Drug Administration, advertising, marketing materials, and prescribing information to consumers." Id. ¶33. In particular, the complaint alleges that Brookshire directly and indirectly infringes the '124 patent by providing "'[p]rofessional pharmacy solutions with a personal approach . . . [with] pharmacy experts who . . . deliver individualized advice and support,'" and that Brookshire's pharmacy staff "'offer[] wellness counseling [and]

recommendations on medication management' that induces consumers to use Cialis for treatment of BPH in the way that Brookshire Brothers intends." Id. ¶34 (quoting Brookshire's website).

UroPep filed this action on July 1, 2015. A month later, Lilly filed a declaratory judgment action in the Southern District of Indiana and simultaneously sought to dismiss this action for lack of subject matter jurisdiction. Lilly later dismissed its declaratory judgment action and withdrew its motion to dismiss, but it filed the present motion seeking to sever and stay the case against Brookshire and to transfer the case against Lilly to the Southern District of Indiana under 28 U.S.C. § 1404(a).[1] UroPep opposes Lilly's motion.

**DISCUSSION**

Lilly does not argue that the initial joinder of Lilly and Brookshire was improper. Instead, Lilly argues that it is the "true defendant" in this case and that the Court should sever the action against Brookshire under Rule 21 of the Federal Rules of Civil Procedure and stay the action against Brookshire pending the resolution of the action against Lilly.

Lilly bases its argument for a severance and a stay of the action against Brookshire on a line of cases involving the so-called "customer-suit exception" to the "first-to-file" rule. The customer-suit exception arose in cases in which a patentee filed an action against the retailers of an accused product, after which the manufacturer of the product filed a declaratory judgment action against the patentee in a different forum. In that circumstance, courts sometimes approve proceeding with the case against the manufacturer and staying the first-filed action against the customer. See Katz v. Lear Siegler, Inc., 909 F.2d 1459, 1454 (Fed. Cir. 1990); Kahn v. Gen. Motors Corp., 889 F.2d 1078, 1081 (Fed. Cir. 1989) (discussing the exception but declining to

---

[1] Brookshire has not opposed the motion, and Lilly's counsel (which also represents Brookshire) has stated that "Brookshire would stipulate to be bound by any ruling the Southern District of Indiana would make." Reply at 3; Hearing Transcript at 111:12-21.

apply it where there was no evidence that the later filed action "would resolve all charges against the customers in the stayed suit, including liability for damages"); Spread Spectrum Screening LC v. Eastman Kodak Co., 657 F.3d 1349, 1357 (Fed. Cir. 2011); Tegic Commc'ns Corp. v. Board of Regents of Univ. of Tex. Sys., 458 F.3d 1335, 1343 (Fed. Cir. 2006).

The customer-suit exception has also been applied in multi-defendant actions in which the manufacturer and retailers are defendants in the same case. In those cases, the customer-suit exception has been used as a basis for severing the action against the retailers from the action against the manufacturer and transferring the action against the manufacturer to a venue where suit against the retailer defendants could not have been brought. The theory underlying that course of action is that the manufacturer is the "true defendant" and the retailer is merely a "peripheral defendant." See In re Nintendo of Am., Inc., 756 F.3d 1363, 1365 (Fed. Cir. 2014) (applying the customer-suit exception to sever the manufacturer from a single action, stay the severed retailer defendants, and transfer the case against the manufacturer to different forum); Belfer Cosmetics, LLC v. Nordstrom, Inc., No. H-15-683, at 3-4 (S.D. Tex. Feb. 29, 2016); UltimatePointer, L.L.C. v. Nintendo Co., No. 6:11-cv-496, at 5-6 (E.D. Tex. June 17, 2014); Shifferaw v. Emson USA, No. 2:09-cv-54, 2010 WL 1064380, at *2-4 (E.D. Tex. Mar. 18, 2010); LG Elecs. Inc. v. Asustek Computers, 126 F. Supp. 2d 414, 422 (D.N.J. 2000); Koh v. Microtek Int'l, Inc., 250 F. Supp. 2d 627, 632-33 (E.D. Va. 2003).

The parties dispute whether this case fits within the customer-suit exception. Lilly argues that the case against it should be severed and transferred because "[t]he liability of Lilly, the manufacturer of Cialis, is predicate to the recovery from Brookshire." Motion at 12. Lilly asserts that it manufactures Cialis and sells it to distributors, and that the claims against Brookshire are therefore peripheral to the claims against Lilly. Motion at 13. Lilly also asserts

that if it were found not to infringe, Brookshire would also necessarily not infringe. Id. at 13-14. UroPep responds that "Lilly's liability as an indirect infringer is predicated upon the existence of a direct infringer—Brookshire—who practices all the steps of the claimed therapeutic method." Response at 1 (emphasis removed).

Lilly asserts that the Federal Circuit's decision in In re Nintendo, 756 F.3d 1363 (Fed. Cir. 2014), requires that this Court grant the motion to sever and stay the case against Brookshire. In Nintendo, various retailers and a manufacturer were accused of infringing a method claim directed to a computer-operated device that produced a display on two monitors. Both the manufacturer and the retailers were charged with direct infringement of the patent. The Federal Circuit found that the issues of infringement and validity were common to Nintendo and the retailer defendants, and that it was appropriate to apply the general principles applicable in cases involving the customer-suit exception. See In re Nintendo 756 F.3d at 1365 ("While the circumstances of this case differ from those of the customer-suit exception, we agree with the district court that the same general principles govern in that Nintendo is the true defendant.").

While there are similarities between this case and Nintendo, there is an important distinction that calls for a different result. In this case, unlike in Nintendo, there is no suggestion that Cialis infringes the '124 patent "off the shelf." The independent claim of the '124 patent asks whether a therapeutic method for "administering to a person in need thereof an effective amount of an inhibitor of phosphodiesterase (PDE) V excluding a compound selected from [a listed group]" has been performed. As to the claim of direct infringement against Brookshire, the parties have focused on whether Brookshire directly infringes the '124 patent by "administering" a drug for "prophylaxis or treatment of [BPH]" according to the claims. See, e.g., Motion to Dismiss briefing, Dkt. Nos. 27, 37, 46, 55.

As to the claim of induced infringement against Lilly, UroPep alleges that Brookshire, along with physicians and other pharmacies, are the direct infringers and that Lilly has induced them to infringe. In order to prove that Brookshire is a direct infringer, UroPep has to prove that Brookshire "administers" Cialis to persons in need of prophylaxis or treatment for BPH. For that reason, even if Lilly is found to have induced infringement by inducing other direct infringers to administer Cialis to persons in need of treatment for BPH, that does not mean that Brookshire is necessarily liable for direct infringement. Therefore, unlike in <u>Nintendo</u> and other cases involving the customer-suit exception, the issue of infringement is not entirely common to Brookshire and Lilly, as proof of infringement by Lilly would not necessarily establish infringement by Brookshire.[2] In such circumstances, the courts have held the customer-suit exception inapplicable. <u>See</u> <u>Kahn</u>, 889 F.2d at 1081-82; <u>Cherdak v. Stride Rite Corp.</u>, 396 F. Supp. 2d 602, 605 (D. Md. 2005) (customer-suit exception not applied where determination of liability of buyer's agent would not entirely determine customer's liability).

Moreover, in a case such as <u>Nintendo</u>, both the manufacturer and the retailer may be independently liable for direct infringement. Even in the absence of any proof of retail sales, the manufacturer can be liable for infringement due to its making, using and selling (to retailers) the accused products. In a case such as this one, by contrast, the party charged with indirect infringement will not be held liable unless the plaintiff proves that some party engaged in direct infringement with respect to the acts of inducement committed by the indirect infringer.

---

[2] Although counsel has represented that Brookshire would agree to be bound by the result of any separate proceedings against Lilly in the Southern District of Indiana, that does not mean that Brookshire has agreed that it would be liable for direct infringement of the '124 patent by "administering" Cialis to patients if Cialis is found liable for induced infringement in Indiana. It is unlikely that the issue of whether Brookshire "administers" Cialis to persons in need of treatment for BPH when it sells Cialis to its customers would be resolved in a separate action against Lilly in the Southern District of Indiana. That issue would therefore remain for resolution in the stayed action against Brookshire in this district.

Because of these differences between cases involving, on the one hand, manufacturers and customers who are both direct infringers and, on the other hand, manufacturers who are indirect infringers and customers who are direct infringers, courts have treated the latter class of cases differently when motions have been made to sever and stay the actions against customers. In particular, courts have declined to apply the customer-suit exception to cases in which the manufacturer is charged as the indirect infringer of a method patent and the retailer is charged as the direct infringer. See Card Activation Techs. v. Pier 1 Imports, No. 09C 2021, 2009 WL 2956926, at *3 (N.D. Ill. Sept. 14, 2009) (citing cases holding that the customer-suit exception did not apply because "the customers were the only direct infringers of the patented process, and the manufacturers could only be liable for indirect infringement"); Ultra Prods., Inc. v. Best Buy Co., No. 09-1095, 2009 WL 2843888, at *5 (D.N.J. Sept. 1, 2009) (reasoning of customer-suit exception "appears inapplicable, or at least persuasive" when patent owner is proceeding on theory of indirect infringement against manufacturer and direct infringement against customer); In re Laughlin Prods., Inc., 265 F. Supp. 2d 525, 537 (E.D. Pa. 2003) (customer suit exception does not apply "where the patentee alleges that the customers themselves have directly infringed the method or process disclosed in the patent"); Am. Acad. Of Sci. v. Novell, Inc., No. C-91-4300, 1992 WL 313101, at *2-3 (N.D. Cal. July 9, 1992) (declining to apply the customer-suit exception "where the patent owner seeks to hold the manufacturer liable solely on a theory of inducement/contributory infringement, claiming direct infringement only against the customer"); A.P.T., Inc. v. Quad Environ. Techs. Corp., 698 F. Supp. 718, 722 (N.D. Ill. 1988) (declining to apply the customer-suit exception in a process patent case where the manufacturer "would be liable only under theories of contributory infringement or active inducement" and the patentee "has independent justification for maintaining its own action" against the direct infringer

customers); Zemel Bros. v. The Dewey Elecs. Corp., No. 82-CV-103, 1982 WL 52212, at *2 (N.D.N.Y. May 21, 1982) (customer-suit exception inapplicable in case involving patented process, where "only the customers themselves may be found liable as direct infringers of the patented process").

The distinction drawn by those courts applies here and, in the Court's view, renders Nintendo inapplicable. To be sure, UroPep's allegations against Lilly include allegations of direct infringement, and even its allegations of indirect infringement do not rely entirely on the actions of Brookshire as the alleged direct infringer. In addition to Brookshire, UroPep alleges that Lilly is liable for indirect infringement by inducing infringement by "others, such as distributors, sales representatives, pharmacies, insurers, physicians, and/or consumers, in this District and elsewhere in the United States. For example, pharmacies and physicians directly infringe." Complaint ¶28. Nonetheless, the core allegations in UroPep's complaint are directed to the role of Brookshire as the direct infringer and Lilly as the indirect infringer with regard to Brookshire's sales of Cialis to customers in this district. This case therefore does not fall within the customer-suit exception as it is conventionally applied to manufacturers and retailers who are both alleged to be direct infringers of an apparatus patent.

Lilly is correct that UroPep is not required to name a particular direct infringer as a party; it is enough that Lilly prove that there is some direct infringer that Lilly has induced to infringe. Reply at 2 n.3. UroPep agrees with that proposition and admits that, in order to prove indirect infringement, UroPep is only required to prove that there is a direct infringer; it is not required to have named the direct infringer as a defendant in the action. Hearing Tr. at 151:19-152:1:4. Nonetheless, UroPep argues that it is entitled to prove direct infringement to the jury with an

actual direct infringer present as a party rather than asking the jury to accept that an absent third party directly infringes. Id. at 152:4-13.

The Court agrees that it is UroPep's prerogative to structure its case as it chooses, even though its selection of Brookshire as the direct infringer may have been motivated, at least in part, by a desire to lay venue for the case against Lilly in this district. To sever Brookshire and force UroPep to litigate against Lilly alone would have one of two consequences: It would either require UroPep to amend its complaint to include a new direct infringer, such as a pharmacy business in the district to which the case against Lilly would be transferred, or it would require UroPep to proceed against Lilly on a theory of indirect infringement without charging any party as the direct infringer. While UroPep could maintain its action against Lilly without adding a particular direct infringer as a party-defendant, requiring UroPep to alter its theory of the case by selecting a new co-defendant, or proving direct infringement by other parties not previously part of UroPep's theory of the case, would impose a substantial burden on UroPep. In the direct/indirect infringement setting, that burden would be far greater than it would be in the typical customer-suit case in which the action against the manufacturer can proceed in exactly the same manner, whether the action against the manufacturer's retailer or retailers is severed or not.

If Lilly distributed Cialis only through Brookshire, and thus Brookshire were the only direct infringer nationwide, there would be no doubt that Lilly could be charged with indirect infringement in this district and that Lilly's motion to sever, stay, and transfer the case against it to another district would be without merit. Of course, it is highly likely that there are other potential direct infringers similarly situated to Brookshire in other districts, including the Southern District of Indiana. However, the fact that a similar case could likely have been

brought against Lilly in other districts is not sufficient to justify disregarding UroPep's choice of this district for its suit and requiring it to refashion its case, either by proceeding without a direct infringer, or by naming a different direct infringer in a different district.[3] The Court therefore DENIES Lilly's motion to sever its case from the case against Brookshire, to stay the action against Brookshire, and to transfer the case against Lilly to the Southern District of Indiana (Dkt. No. 28).

At the February 11, 2016, hearing on the pretrial motions, the Court advised the parties that it would not stay the proceedings in this case pending the resolution of the motions. The Court now formally DENIES the defendants' motion (Dkt. No. 57) to stay proceedings pending the resolution of the defendants' motions to dismiss the complaint, to disqualify UroPep's counsel, and to sever and stay the case against Brookshire and transfer the case against Lilly to the Southern District of Indiana.

IT IS SO ORDERED.

SIGNED this 26th day of April, 2016.

_William C. Bryson_
WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE

---

[3] As there is no allegation that UroPep could have brought suit against Brookshire in the Southern District of Indiana, the Court finds that this suit against both defendants cannot be transferred there under 28 U.S.C. § 1404(a).