# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| ERFINDERGEMEINSCHAFT UROPEP GbR, | § § § § § | |
| *Plaintiff*, | § § | |
| v. | § § | Case No. 2:15-CV-1202-WCB |
| ELI LILLY AND COMPANY, and BROOKSHIRE BROTHERS, INC., | § § § § | |
| *Defendants*. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is the motion of defendant Eli Lilly & Co. ("Lilly") for a protective order. Dkt. No. 88. The motion is DENIED.

**A. Background**

In the course of discovery in this case, the plaintiff, Erfindergemeinschaft UroPep GbR ("UroPep") served Lilly with a set of 18 interrogatories. Pursuant to Rule 26(c), Fed. R. Civ. P., Lilly has moved the Court for a protective order striking UroPep's interrogatories and requiring UroPep to serve new interrogatories in compliance with Rule 33, Fed. R. Civ. P., and the Court's Discovery Order in this case, Dkt. No. 64. Lilly's contention is that several of the interrogatories contain multiple parts, each of which constitutes a separate interrogatory. As a result, according to Lilly, the true number of interrogatories contained in UroPep's set of interrogatories is not 18, but is in excess of the limit of 25 interrogatories permitted by Rule 33, Fed. R. Civ. P., and this Court's Discovery Order.

The Court has examined each of the complained-of interrogatories and has determined that several of them contain multiple parts that should be treated as separate interrogatories.

Nonetheless, the Court concludes that the total number of interrogatories, even treating those multiple parts as separate interrogatories, does not exceed 25. Accordingly, the Court will deny Lilly's motion for a protective order.

**B. Applicable Law**

Rule 33(a)(1), Fed. R. Civ. P., provides that unless otherwise stipulated or ordered by the court, "a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts." The Discovery Order in this case similarly provides for each party to serve a maximum of 25 interrogatories. There has been no stipulation or request by either party to increase the permissible number of interrogatories. Thus, the question before the Court is how to calculate the number of interrogatories that UroPep has actually posed in the 18 numbered interrogatories that it has served on Lilly.

Calculating the number of interrogatories, in a case in which the interrogatories are not extremely straightforward, is not an exact science. When the 25-interrogatory limit was adopted as part of Rule 33 in 1993, the Advisory Committee Note provided the following rather cryptic and largely unhelpful summary:

> Each party is allowed to serve 25 interrogatories upon any other party, but must secure leave of court (or a stipulation from the opposing party) to serve a larger number. Parties cannot evade this presumptive limitation through the device of joining as "subparts" questions that seek information about discrete separate subjects. However, a question asking about communications of a particular type should be treated as a single interrogatory even though it requests that the time, place, persons present, and contents be stated separately for each such communication.

146 F.R.D. 401, 675-76 (1993).

When a multi-part interrogatory is challenged as being multiplicitous, the Court must decide what constitutes a "discrete separate subject." Courts have struggled to define that term and apply it when seeking to resolve disputes over whether one party has exceeded the

permissible number of interrogatories by including multiple questions in a single interrogatory. See, e.g., Precision of New Hampton, Inc. v. TriComponent Prods. Corp., No. CV12-2020, 2012 WL 6520139, at *2 (N.D. Iowa Dec. 13, 2012) ("Courts have struggled with finding a workable method to determine if a 'subpart' is properly counted as an additional interrogatory."); Carpenter v. Donegan, Civ. No. 1:11-cv-43, 2012 WL 893472, at *2 (N.D.N.Y. Mar. 15, 2012) ("This Court as well as others have found this rather brief analysis [in the Advisory Committee's Note] insufficient to be a guide on what can become a rather complicated and contorted maze in interpreting interrogatories and their subparts as 'discrete separate subjects'"); United States ex rel. Liotine v. CDW-Government, Inc., No. 05-33, 2010 WL 2025363, at *1 (S.D. Ill. May 20, 2010) ("There is no bright-line test on how to count parts of interrogatories."); FTC v. Think All Publishing, L.L.C., No. 4:07-cv-11, 2008 WL 687455, at *1 (E.D. Tex. Mar. 11, 2008) ("'discrete subpart' has never been defined with surgical precision"); Dimitrijevic v. TV&C GP Holding Inc., Civil Action H-04-3457, 2005 U.S. Dist. LEXIS 41399, at *3-4 (S.D. Tex. Aug. 24, 2005) ("[C]ounting to 25 is not always easy . . . . No general test or formula is offered to assist courts in determining when a particular subpart is merely a device to evade the numerical limit. Nor have the courts been very successful in devising a uniform approach to the problem."); Banks v. Office of the Senate Sergeant-at-Arms, 222 F.R.D. 7, 10 (D.D.C. 2004) (identifying "discrete subpart" has "proven difficult").

At least one point is clear. Despite some early contrary authority, see Valez v. Ford Motor Co., 134 F.R.D. 296, 298 (D. Nev. 1991), it is now well settled that the question whether an interrogatory contains more than one "discrete separate subject" does not turn on whether the interrogatory has separately enumerated subparts. The subparts can be explicit or implicit; the number of subparts does not turn on the formalism of labeling. See 7 James Wm. Moore,

Moore's Federal Practice § 33.30[2], at 33-33 (3d ed. 2016); Safeco of Am. v. Rawstron, 181 F.R.D. 441, 443 (C.D. Cal. 1998) ("Extensive use of subparts, whether explicit or implicit, could defeat the purposes of the numerical limit contained in Rule 33(a) by rendering it meaningless, unless each subpart counts as a separate interrogatory.").

After that, matters become more difficult. The courts and treatise writers have used different verbal formulations in an effort to fashion a test for whether particular interrogatories contain "discrete subparts."

One test that has occasionally been used is the "discrete bits of information" test, Prochaska & Assocs. v. Merrill Lynch Pierce, Fenner & Smith, Inc., 155 F.R.D. 189, 191 (D. Neb. 1993); see also Hasan v. Johnson, No. 1-08-cv-381, 2012 WL 569370, at *4 (E.D. Cal. Feb. 21, 2012). But that test is too exacting; information that is clearly within the scope of a single inquiry may still be viewed as one of a number of "discrete bits of information."

Another test asks whether a subpart of an interrogatory "introduces a line of inquiry that is separate and distinct from the inquiry made by the portion of the interrogatory that precedes it." Ott v. Mortgage Investors Corp. of Ohio, Inc., No. 3-14-cv-645, 2015 WL 691643, at *1 (D. Or. Feb. 17, 2015); Kline v. Berry, 287 F.R.D. 75, 79 (D.D.C. 2012); Thomas v. Yates, No. 05-1198, 2009 WL 3273280, at *2 (E.D. Cal. Oct. 9, 2009); Theobles v. Industrial Maintenance Co., 247 F.R.D. 483, 485 (D.V.I. 2006); Willingham v. Ashcroft, 226 F.R.D. 57, 59 (D.D.C. 2005). While that test is accurate as far as it goes, it is essentially just a restatement of the term "discrete subpart" that it is intended to define, so it does not add much by way of resolving power.

One leading treatise states that "it would appear that an interrogatory containing subparts directed at eliciting details concerning a common theme should be considered a single question." 8B Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice & Procedure

§ 2168.1, at 39-40 (2010). That "common theme" standard can be useful and has been invoked by some courts. See In re Lithium Ion Batteries Antitrust Litig., No. 13-md-2420, 2015 WL 1221924, at *2 (N.D. Cal. Mar. 17, 2015); Pouncil v. Branch Law Firm, 277 F.R.D. 642, 646 (D. Kan. 2011); Rambus Inc. v. NVIDIA Corp., No. C-08-3343, 2011 WL 11746749, at *14 (N.D. Cal. Aug. 24, 2011); Mitchell Co. v. Campus, CA 07-177, 2008 U.S. Dist. LEXIS 47505, at *20-22 (S.D. Ala. June 16, 2008) (quoting Estate of Manship v. United States, 232 F.R.D. 552, 556 (M.D. La. 2005)) (subpart "designed to obtain additional details concerning the general theme presented in the primary interrogatory question"); Cardenas v. Dorel Juvenile Grp., Inc., 231 F.R.D. 616, 620 (D. Kan. 2006).

There are two problems with that test, however. First, as the treatise writers acknowledge (with a measure of understatement), "the breadth of the area inquired about may be disputable." Federal Practice & Procedure § 2168.1, at 40. What constitutes "a common theme" or "the same general theme" is subject to widely divergent views. Second, if the concept of "common theme" is given a sufficiently broad interpretation, there is almost no limit to the use of multiple subparts that could qualify as falling within a single interrogatory. Each interrogatory typically deals with a core subject matter, and all subparts of that interrogatory can ordinarily be characterized as sharing a "common theme" with the primary question. But that approach would impose almost no limit on the use of subparts to expand the number of interrogatories beyond the 25-interrogatory limit prescribed in the Rule, thereby defeating the purpose of the 1993 amendment to the Rule that limited the number of interrogatories to 25. See Dimitrijevic v. TV&C GP Holding Inc., 2005 U.S. Dist. LEXIS 41399, at * 4 ("the problem with the 'common theme' test" is that "almost never will it yield a separately countable discrete subpart"); quoting Safeco, 181 F.R.D. at 443 (same).

While acknowledging that no precise test is available to determine "discreteness" for purposes of the Rule 33(a)(1) inquiry, most courts have followed what is sometimes referred to as the "related question" approach. In an effort to give some specificity to the inquiry, the test applied under the "related question" approach is generally stated as follows: subparts that are logically or factually subsumed within and necessarily related to the primary question" should not be treated as separate interrogatories. Kendall v. GES Exposition Servs., Inc., 174 F.R.D. 684, 686 (D. Nev. 1997) (quoting Ginn v. Gemini Inc., 137 F.R.D. 320, 322 (D. Nev. 1991)); see also Gilmore v. Lockard, No. 1:12-cv-925, 2015 WL 5173170, at *8 (E.D. Cal. Sept. 3, 2015); In re Lithium Ion Batteries Antitrust Litig., No. 13-md-2420, 2015 WL 1221924, at *2 (N.D. Cal. Mar. 17, 2015); Klein v. Federal Ins. Co., No. 7:03-cv-102, 2014 WL 3408355, at *6 (N.D. Tex. July 14, 2014); Makaeff v. Trump Univ., LLC, No. 10-cv-940, 2014 WL 3490356, at *4 (S.D. Cal. July 11, 2014); Perez v. Aircom Mgmt. Corp., No. 12-60322, 2012 WL 6811079, at *1 (S.D. Fla. Sept. 24, 2012); Thermal Design, Inc. v. Guardian Bldg. Prods., Inc., No. 08-C-828, 2011 WL 1527025, at *2 (E.D. Wis. Apr. 20, 2011); Calderon v. Reederei Claus-Peter Offen GmbH & Co., No. 07-61022, 2008 WL 4194810, at *1 (S.D. Fla. Sept. 11, 2008); State Farm Mut., Auto. Ins. Co. v. Pain & Injury Rehabilitation Clinic, Inc., No. 07-cv-15129, 2008 WL 2605206, at *2 (E.D. Mich. June 30, 2008); Madison v. Nesmith, No. 9:06-cv-1488, 2008 WL 619171, at *3 (N.D.N.Y. Mar. 3, 2008); Williams v. Taser Int'l, Inc., No. 1:06-cv-51, 2007 WL 1630875, at *2 (N.D. Ga. June 4, 2007); Trevino, 232 F.R.D. at 614; Safeco, 181 F.R.D. at 445.

Another way that approach has been articulated is to say that "where the first question can be answered fully and completely without answering the second question, then the second question is totally independent of the first and not factually subsumed within [it]." FTC v. Think All Publ'g, L.L.C., 2008 WL 687455, at *1; see also Keranos, LLC v. Silicon Storage Techs.,

Inc., No. 2:13-cv-17, 2013 WL 5763738, at *1 (E.D. Tex. Aug. 5, 2013); Carpenter v. Donegan, 2012 WL 893472, at *2; Estate of Manship, 232 F.R.D. at 555; Dimitrijevic, 2005 U.S. Dist. LEXIS, at *8; Krawczyk v. City of Dallas, No. 3:03-cv-584, 2004 WL 614842, at *2 (N.D. Tex. Feb. 27, 2004); Kendall, 174 F.R.D. at 686.

Acknowledging the difficulty of applying the various verbal formulations for counting "discrete subparts," some courts have observed that the tests must be tempered by a "pragmatic approach" that asks if an interrogatory "threatens the purpose of Rule 33 by combining into one interrogatory several lines of inquiry that should be kept separate." Warren v. Bastyr Univ., No. 2:11-cv-1800, 2013 WL 1412419, at *1 (W.D. Wash. Apr. 8, 2013); Paananen v. Cellco P'ship, No. C08-1042, 2009 WL 3327337, at *2 (W.D. Wash. Oct. 8, 2009); Willingham v. Ashcroft, 226 F.R.D. 57, 59 (D.D.C. 2005); Banks, 222 F.R.D. at 10. The pragmatic approach calls for the court to apply the governing standard with an eye to the competing purposes of Rule 33(a)(1): allowing reasonable latitude in formulating an inquiry to elicit as complete an answer as possible, while at the same time not allowing the multiplication of interrogatories to the point that it defeats the purposes underlying the 25-interrogatory limit. See Williams v. Board of Cty. Comm'rs of the Unified Gov't of Wyandotte Cty. & Kan. City, Kan., 192 F.R.D. 698, 701 (D. Kan. 2000) ("Extensive use of subparts, whether explicit or implicit, could defeat the purposes of the numerical limit contained in Rule 33(a) . . . . On the other hand, if all subparts count as separate interrogatories, the use of interrogatories might be unduly restricted or requests for increases in the numerical limit might become automatic.").

In the Court's view, the "related question" approach, combined with an eye toward the pragmatic considerations, provides the best vehicle for remaining faithful to the policies intended to be served by the numerical limitation in Rule 33(a)(1). It is important to acknowledge at the

outset that the issue of "discreteness" cannot reliably be captured by a verbal formula, and that ultimately the issue turns on a case-by-case assessment of the degree to which the subpart is logically related to the primary question in the interrogatory, as opposed to being separate and distinct. See Allen v. Mill-Tel, Inc., 283 F.R.D. 631, 637 (D. Kan. 2012); Mitchell Co., 2008 U.S. Dist. LEXIS 47505, at *20-22; Trevino v. ABC Am., Inc., 232 F.R.D. 612 (N.D. Cal. 2006); Estate of Manship, 232 F.R.D. at 555; Safeco, 181 F.R.D. at 445. That approach acknowledges that the issue of "discreteness" often cannot be resolved by resort to a crisp verbal formula; it recognizes the reality that "discreteness" is a matter of degree and that deciding whether a subpart of an interrogatory is sufficiently "discrete" to be regarded as a separate interrogatory will frequently depend on the particular circumstances of each case and may not always be answerable with complete confidence.

With these standards in mind, the Court now turns to analyze the particular interrogatories about which Lilly has complained.

**C. Analysis of the Challenged Interrogatories**

<u>Interrogatory No. 1</u>: This interrogatory clearly has two discrete subparts. The first asks for a description, in full and complete detail, of "the mechanism underlying the pharmaceutical effects of Cialis for the treatment of ED [erectile dysfunction], including the method of action, molecules, pathways, and reactions involved."

The second subpart of Interrogatory No. 1 asks for the identity of "all Persons involved in the design, testing or other aspects of developing Cialis for treating ED," and it further asks Lilly to identify "all Persons involved in the design, testing or other aspects of developing Cialis for treating ED and all Documents . . . concerning such mechanism including notebooks, experimental results, clinical testing results, non-clinical testing results, computer modeling

results, relevant communications, and literature."[1] That subpart has no direct relationship to the first subpart; a full and complete answer to the first subpart regarding the mechanism underlying the pharmaceutical effects of Cialis for the treatment of ED would not necessarily entail the identification of all persons who had been involved in the development of Cialis for treating ED, nor would it require the production of documents relating to Lilly's design and testing activities during the development of Cialis.

Lilly is therefore correct that this interrogatory has two discrete subparts and counts as two interrogatories.

Interrogatory No. 2: This interrogatory tracks the first interrogatory, except that it addresses the use of Cialis for treatment of the signs and symptoms of BPH [benign prostatic hyperplastia]. For the same reasons that apply to Interrogatory No. 1, Lilly is correct that this interrogatory has two discrete subparts and counts as two interrogatories.[2]

Interrogatory No. 3: This interrogatory first asks for a description, in full and complete detail, of "the ability of Cialis to inhibit PDE V relative to the ability of Cialis to inhibit each of the following: PDE I, PDE II, PDE III, PDE IV, PDE VI, PDE VII, PDE IIX [sic], PDE IX, PDE X, PDE XI, and PDE XII." The interrogatory then requests information about the "design of all testing, either in vivo, in vitro, clinically or non-clinically," and asks for the identity of all

---

[1] The use of the term "mechanism" in the second part of the interrogatory, following its use in the first part of the interrogatory, is a source of some possible confusion. The context of the second reference to "mechanism," however, makes it fairly clear that the request in that portion of the interrogatory is directed to Lilly's documents relating to its experimental research.

[2] Although Interrogatory No. 2 is directed to the use of Cialis for treatment of BPH, the second sentence of the interrogatory refers to "Persons involved in the design, testing or other aspects of developing Cialis for treating ED." The Court assumes the reference to ED in that sentence is a typographical error and that what was intended was a reference to BPH, not ED. If the Court is incorrect in that assumption, the second sentence of Interrogatory No. 2 is identical to the second sentence of Interrogatory No. 1. In either event, however, that sentence is a discrete subpart of Interrogatory No. 2.

persons involved in the design and testing as well as documents concerning the difference in the inhibiting potency of Cialis.

Lilly argues that Interrogatory No. 3 has at least two subparts and arguably as many as 22, since it calls for experimental results and other information regarding 11 different compounds. The Court rejects Lilly's suggestion that the reference to the 11 different compounds in the PDE family of enzymes converts the interrogatory into two sets of 11 different questions. The inquiry relates to a family of compounds that could have been described more generically; UroPep's decision to describe those compounds with specificity for purposes of precision does not convert one question into 11. See Ginn, 137 F.R.D. at 321-22 (added specificity in interrogatories is desirable and should not "be counted as a separate interrogatory"). However, as in the case of the first two interrogatories, the portion of Interrogatory No. 3 that relates to "the design of all testing" of the inhibitory effect of Cialis does not relate to information that would be a necessary part of an answer to the first portion of the interrogatory, and it is therefore not legally or factually subsumed within the first portion.

Lilly is therefore correct that this interrogatory contains two discrete subparts and counts as two interrogatories. It does not, however, contain 22 discrete subparts.

Interrogatory No. 5: This interrogatory asks for a full and complete description of Lilly's knowledge of a specified patent and three specified applications, including "all analysis, discussions, communications concerning the aforementioned patent and/or applications, all attempts to design around or otherwise avoid infringement," the effects of that knowledge on Lilly's "research, development, marketing, sales or other aspects of Defendant's operations, and all actions taken as a result of or otherwise related to such knowledge," the identity of all employees with knowledge of those materials, "when each of the employee[s] with knowledge

came to know any of the above patent and/or applications," and "all communications from or to each of the employee[s] with knowledge concerning the aforementioned patent and/or applications."

Lilly contends that Interrogatory No. 5 contains at least three discrete subparts: Lilly's knowledge of the patent and applications; Lilly's "attempts to design around the asserted patent or otherwise avoid infringement," and "how knowledge of the asserted patent or UroPep's patent applications [a]ffected Lilly's research, marketing and sales operations." The Court agrees with Lilly that Interrogatory No. 5 contains three discrete subparts. The question regarding Lilly's attempts to design around the patent or otherwise avoid infringement is not necessarily subsumed within the primary question of Lilly's knowledge of the patent and related applications. The same is true of the question as to how knowledge of the asserted patents or applications affected Lilly's research, marketing, and sales operations "and all actions taken as a result of or otherwise related to such knowledge." That question is sufficiently broad that it extends beyond the scope of the question regarding attempts to design around or otherwise avoid infringement, and thus it constitutes a discrete subpart. If UroPep were to withdraw that question or confine it to the measures taken to design around the patent or otherwise avoid infringement, that portion of Interrogatory No. 5 would not constitute a discrete subpart.

As presently drafted, this interrogatory contains three discrete subparts and counts as three interrogatories.

<u>Interrogatory No. 10</u>: This interrogatory asks for a full and complete description of Lilly's basis for filing three specified patent applications, any application claiming priority to those applications, and any U.S. patent application "which you contend claims Cialis and/or any other inhibitor of PDE V for treatment of the signs and symptoms of BPH," including

identification of any testing to support the disclosed or claimed compositions or methods, and all employees involved the specified applications.

Lilly contends that Interrogatory No. 10 contains at least six discrete subparts. According to Lilly, the detailed description of the three patent applications counts as three subparts, and the description of the testing for those applications counts as three more subparts.

The Court disagrees with Lilly's contention that Interrogatory No. 10 contains multiple subparts. While the reference to the three related applications provides specificity, the interrogatory makes clear that the three are sufficiently related that they can properly be the subject of a single inquiry. See Keranos, 2013 WL 5763738, at *2 ("Plaintiff's interrogatories should not be counted multiple times based on the number of patents or accused products responsive to each category."). Moreover, the testing referred to in the interrogatory is identified as related to the referenced applications and thus is subsumed within the primary question regarding Lilly's basis for filing the applications. And the question as to Lilly's basis for filing the three applications cannot be "answered fully and completely without answering the second question," i.e., what testing was performed by Lilly "to support the compositions or methods disclosed and/or claimed in the aforementioned applications"; the second question is therefore not totally independent of the first, but is "factually subsumed within [it]." FTC v. Think All Publ'g, L.L.C., 2008 WL 687455, at *1; Krawczyk, 2004 WL 614842, at *3.

This interrogatory therefore does not contain any discrete subparts and counts as one interrogatory.

Interrogatory No. 14: This interrogatory asks for a full and complete description of Lilly's "revenues, costs, and expenses incurred with respect to actual and projected sales of Cialis," broken down by treatment for ED alone, by treatment for ED together with BPH, and by

treatment for BPH alone; the interrogatory also requests various details such as the number of doses of Cialis sold and the company's profits, costs, and pricing.

Lilly contends that the interrogatory contains at least four discrete subparts. Lilly gets to that number by counting the question regarding treatment for ED alone, treatment for ED and BPH, and treatment for BPH alone as three different subparts, and by counting the request for information about how Lilly's sales and profits are recorded as a discrete subpart. The Court disagrees with Lilly. A request for a breakdown of the sales and profits for Cialis according to the three different purposes for which Cialis can be prescribed does not convert the inquiry into three separate questions, because the primary question has to do with the overall revenues, costs, and expenses relating to the sales of Cialis that is prescribed for those three purposes. Moreover, the request for information about how Lilly's sales or profits are recorded is clearly subsumed within the primary question, as that information may well be necessary to an understanding the responses to the primary question.

This interrogatory therefore does not contain any discrete subparts and counts as one interrogatory.

Interrogatory No. 15: This interrogatory asks for a breakdown of the "revenues, costs, and expenses incurred with respect to actual and projected sales of Cialis" according to the treatments for which Cialis is prescribed, the channels through which it is distributed, and the geographic regions in which it is sold.

In Lilly's view, this interrogatory contains at least four discrete subparts. As in the case of Interrogatory No. 14, Lilly counts as separate questions the financial information relating to each treatment purpose—ED alone, ED and BPH, and BPH alone. For the same reason given

above, the Court rejects Lilly's argument that the information relating to each treatment purpose necessarily constitutes a separate question.

Finally, Lilly contends that the request that Lilly "identify and describe each entity involved in each channel of sales [of] Cialis" is a discrete subpart of the interrogatory. The Court disagrees. A description of the entities involved in the channels of sales for Cialis is factually subsumed within and necessarily related to the primary question regarding a breakdown of the sales of Cialis according to the designated criteria, and is necessary for a full and complete response to that question. See Krawczyk, 2004 WL 614842, at *2-3.

This interrogatory therefore does not contain any discrete subparts and counts as one interrogatory.

Interrogatory No. 16: This interrogatory asks about the pricing structure relating to Cialis for treatment of ED, for treatment of ED with BPH, and for treatment of BPH alone, including information such as rebates, discounts, and transfer pricing. The interrogatory also asks for "the rationale underlying all changes of the price or pricing structure for Cialis," and it asks for "all documents, including by way of example contracts or agreements with Cialis purchasers [and other entities] that support or refute Your answer."

Lilly argues that this interrogatory contains at least five discrete subparts. Three of the purported subparts relate to the distinction between treatment for ED alone, treatment for ED and BPH, and treatment for BPH alone. As in the case of Interrogatory Nos. 14 and 15, the Court does not regard those as discrete subparts of the interrogatory. The request for documents supporting or refuting the answer is also not a discrete subpart of the interrogatory. While the documentary request is broad, it relates specifically to the primary question in the interrogatory

regarding the pricing structure for Cialis and therefore is fairly subsumed within the primary question.

This interrogatory therefore does not contain any discrete subparts and counts as one interrogatory.

In sum, the Court concludes that Lilly's argument in its motion is correct in part, in that UroPep's 18 interrogatories actually constitute more than 18 interrogatories after the discrete subparts are counted. Counting the discrete subparts, UroPep's interrogatories total 23 in number. However, because that number does not exceed the permissible number of 25 interrogatories under Rule 33(a)(1), Fed. R. Civ. P., or the Court's discovery order, Lilly's motion for a protective order is denied.

IT IS SO ORDERED.

SIGNED this 13th day of May, 2016.

_____
WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE