# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | |
|---|---|
| ERFINDERGEMEINSCHAFT UROPEP GBR, | Court File No.: 2:15-cv-01202-WCB |
| Plaintiff, | |
| vs. | **JURY TRIAL DEMANDED** |
| ELI LILLY AND COMPANY, and BROOKSHIRE BROTHERS, INC., | |
| Defendants. | |

## DEFENDANT ELI LILLY & COMPANY'S MOTION AND MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION IN LIMINE

## TABLE OF CONTENTS

**Page**

I.     LEGAL AUTHORITY ..................................................................................................2

II.    ARGUMENT.............................................................................................................3

    A.   The Court Should Exclude All Undisclosed Argument and Purported Evidence of
        "Willful" Infringement..........................................................................................3

    B.   The Court Should Exclude Evidence or Argument Regarding Inferences as to the
        Validity, Infringement, Meaning, or Scope of the '124 Patent Drawn from
        Unrelated Patents. ...............................................................................................6

    C.   The Court Should Preclude UroPep from Referring to a "Presumption of
        Validity" at Trial. ................................................................................................8

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AdvanceMe Inc. v. RapidPay, LLC*,
    509 F. Supp. 2d 593 (E.D. Tex. 2007).......................................................................................4

*Alloc, Inc. v. Pergo, Inc.*,
    No. 02-C-0736, 2007 WL 5289735 (E.D. Wis. Nov. 21, 2007)................................................9

*Avia Grp. Int'l, Inc. v. L.A. Gear Cal., Inc.*,
    853 F.2d 1557 (Fed. Cir. 1988).................................................................................................9

*Chiron Corp. v. Genentech, Inc.*,
    363 F.3d 1247 (Fed. Cir. 2004).................................................................................................8

*Genentech, Inc. v. Novo Nordisk A/S*,
    108 F.3d 1361 (Fed. Cir. 1997).................................................................................................6

*Halo Electronics, Inc. v. Pulse Electronics, Inc.*,
    136 S. Ct. 1923 (2016).........................................................................................................3, 4

*Kam Hing Enters., Inc. v. Wal-Mart Stores, Inc.*,
    359 F. App'x 235 (2d Cir. 2010)..............................................................................................2

*Ortho Pharm. Corp. v. Smith*,
    959 F.2d 936 (Fed. Cir. 1992)..................................................................................................6

*Perry v. Ethan Allen, Inc.*,
    115 F.3d 143 (2d Cir. 1997).....................................................................................................2

*Server Tech., Inc. v. Am. Power Conversion Corp.*,
    No. 3:06-CV-00698-LRH, 2014 WL1308617 (D. Nev. Mar. 31, 2014)..................................9

*Sims v. Blot*,
    534 F.3d 117 (2d Cir. 2008).....................................................................................................2

*State Indus., Inc. v. A.O. Smith Corp.*,
    751 F.2d 1226 (Fed. Cir. 1985)................................................................................................4

*Voda v. Cordis Corp.*,
    No. CIV-03-1512-L, 2006 WL 5347777 (W.D. Okla. May 10, 2006)....................................9

**Other Authorities**

Federal Rule of Civil Procedure 26(a)(2)(B) ............................................................................2, 5

Federal Rule of Civil Procedure 37(c)(1) ................................................................................2, 5

Federal Rule of Civil Procedure 26(e)(1)(A) ...........................................................................2, 5

Federal Rules of Evidence 401 ............................................................................................2, 6, 8

Federal Rules of Evidence 402 ...................................................................................................2

Federal Rules of Evidence 403 ....................................................................................2, 5, 6, 8, 9

## JOINT APPENDIEX OF EXHIBITS

### Volume 1: Exhibits Submitted in Connection with Defendant's Motions for Summary Judgment and Motions To Exclude Testimony (Dkt. Nos. 172, 173, 174, and 175) Exhibits Nos. 1 Through 32, Provided on January 17, 2017

| EXHIBIT | DESCRIPTION | APP. # |
|---------|-------------|--------|
| 1. | U.S. Patent No. 8,791,124 | 0001-5 |
| 2. | Pfizer U.S. Patent No. 6,469,012 | 0006-52 |
| 3. | *Ex Parte* Reexamination Certificate for U.S. Patent No. 6,469,012 | 0053-87 |
| 4. | *Ex Parte Pfizer*, BPAI Opinion Dated 2/12/2010 | 0088-143 |
| 5. | First Expert Report of Joseph A. Beavo | 0144-167 |
| 6. | Second Expert Report of Joseph A. Beavo | 0168-179 |
| 7. | Responsive Expert Report of Joseph A. Beavo | 0180-194 |
| 8. | Expert Report of David P. Rotella | 0195-304 |
| 9. | Responsive Expert Report of David P. Rotella | 0305-328 |
| 10. | Expert Report of Claus Roehrborn | 0329-439 |
| 11. | Expert Report of Christopher Vellturo | 0440-524 |
| 12. | Expert Report of Andrew S. Bell | 0525-532 |
| 13. | Declaration of Andrew S. Bell, dated August 8, 2016 | 0533-580 |
| 14. | Deposition Transcript of Andrew S. Bell, dated August 11, 2016 ("1st Bell Deposition") | 0581-589 |
| 15. | Expert Report of Steven A. Kaplan | 0590-636 |
| 16. | Expert Report of Anthony M. Sliwinski | 0637-651 |
| 17. | Deposition Transcript of Nicholas Terrett, dated May 26, 2016 | 0652-661 |
| 18. | Deposition Transcript of Christopher A. Vellturo, dated January 17, 2017 (*Draft Transcript*) | 0662-0671 |
| 19. | Declaration of Vincent Allen Florio | 0672-683 |

| EXHIBIT | DESCRIPTION | APP. # |
|---------|-------------|--------|
| 20. | A. Daugan et al., J. Med. Chem. (2003); 46:4525-4532 | 0684-692 |
| 21. | A. Daugan, et al., J. Med. Chem. (2003); 46:4533-4542 | 0693-703 |
| 22. | NK Terrett, AS Bell, D Brown and P Ellis, Bioorganic & Medicinal Chemistry Letters (1996); 6(15):1819-1824 | 0704-710 |
| 23. | Cheung, C. S. & Deaton, K., 1994, "TCM Management Benign Prostate Hyperplasia - Long Bi (Prostatism) published in November 1994 by Harmonious Sunshine Cultural Center, PO Box 591524, San Francisco, CA 94159-1524 | 0711-768 |
| 24. | Xin, et al., 2003 "Effects of icariin on cGMP-specific PDE5 and cAMP-specific PDE4 activities" Asian J Androl. 5(1):15-8 | 0769-772 |
| 25. | Ning, et al., 2006 "Effects Of Icariin On Phosphodiesterase-5 Activity In Vitro And Cyclic Guanosine Monophosphate Level In Cavernous Smooth Muscle Cells Urology" 68:1350-4 | 0773-777 |
| 26. | Estrade et al. (1998) "Effect of a cGMP-specific phosphodiesterase inhibitor on retinal function" | 0778-784 |
| 27. | Beavo (1995) "Cyclic Nucleotide Phosphodiesterases: Functional Implications of Multiple Isoforms | 0785-809 |
| 28. | Beavo, et al. (1994) "Multiple Cyclic Nucleotide Phosphodiesterases" | 0810-816 |
| 29. | Nonclinical Pharmacology Reports | 0817-935 |
| 30. | Letter from Kim Larson to Eli Lilly regarding Potential Licensing Arrangement for Patent US 8,791,124, dated October 9, 2014 | 0936 |
| 31. | Uropep's Responses to Eli Lilly's First Set of Interrogatories (Nos. 1-16), dated May 13, 2016 | 0937-961 |
| 32. | Cialis Label | 0962-993 |

**Volume Two: Exhibits Submitted in Connection with Defendant's Opposition to Plaintiff's
Motion for Confirmation of the Court's Claim Construction Order and Partial Summary
Judgment of Infringement (Dkt. No. 194)
Exhibit Nos. 33 Through 54, Provided on January 31, 2017**

| EXHIBIT | DESCRIPTION | APP. # |
|---------|-------------|--------|
| 33. | Prosecution History of Application No. 09/462,090 | 0994-1300 |
| 34. | Prosecution History of U.S. Patent No. 8,106,061 | 1301-2719 |
| 35. | Prosecution History of U.S. Patent No. 8,791,124 | 2720-3009 |
| 36. | Deposition Transcript of Andrew Bell, dated January 27, 2017 ("2nd Bell Deposition") | 3010-3125 |
| 37. | Deposition Transcript of Anthony Sliwinski, dated January 21, 2017 | 3126-3251 |
| 38. | Sybertz, et al., "cGMP Phosphodiesterase Inhibition: A New Mechanism for the Discovery of Therapeutic Agents," Current Pharm. Design, 373-90 (1995) | 3252-3269 |
| 39. | Fawcett, et al., "Molecular cloning and characterization of a distinct human phosphodiesterase gene family: PDE11A," PNAS (March 28, 2000) | 3270-3275 |
| 40. | Ückert, et al., "Immunohistochemical Distribution of cAMP- and cGMP-Phosphodiesterase (PDE) Isoenzymes in the Human Prostate," 49 Eur. Urol., 740-745, at 745 (2006) | 3276-3281 |
| 41. | Bischoff, "Potency, selectivity, and consequences of nonselectivity of PDE inhibition," 6 Int'l J. of Impotence Research, S11-S14 (2004) | 3282-3285 |
| 42. | Abrams, New words for old: lower urinary tract symptoms for "prostatism", 308 BMJ 929-30 (1994) | 3286-3287 |
| 43. | Barry & Roehrborn, "Management of Benign Prostatic Hyperplasia," 48 Annu. Rev. Med. (1997), 177-189 | 3288-3304 |
| 44. | Scofield & Kaplan, "Voiding dysfunction in men: pathology and risk factors" (2008), 20 Intl. J. Imp. Res. (2008), S2-S10 | 3305-3313 |
| 45. | T.J. Christmas, et al. (1991) "Alpha-adrenoceptor blockers in the treatment of benign prostatic hyperplasia" | 3314-3318 |

| EXHIBIT | DESCRIPTION | APP. # |
|---|---|---|
| 46. | Rebuttal Expert Report of Claus Roehrborn, M.D., dated January 14, 2017 | 3319-3336 |
| 47. | Plaintiff Erfindergemeinschaft UroPep GbR's Amended Disclosure of Asserted Claims, Infringement Contentions, and Accompanying Document Production Pursuant to Local Patent Rules 3-1 and 3-2 to Defendant Eli Lilly & Co., dated November 12, 2016 | 3337-3342 |
| 48. | (Bell Deposition Ex. 21) Linda M. McAllister-Lucas, et al. (1993) "The Structure of a Bovine Lung cGMP-binding, cGMP-specific Phosphodiesterase Deduced from a cDN A Clone" | 3343-3354 |
| 49. | (Bell Deposition Ex. 23) Graeme B. Bolger, et al. (1996) "Alternative Splicing of cAMP-specific Phosphodiesterase mRNA Transcripts" | 3355-3362 |
| 50. | (Bell Deposition Ex. 24) Chen Yan, et al. (1996) "The Calmodulin-dependent Phosphodiesterase Gene PDElC Encodes Several Functionally Different Splice Variants in a Tissue-specific Manner" | 3363-3370 |
| 51. | Validity Expert Report of Dr. Andrew Bell, dated January 14, 2017 | 3371-3449 |
| 52. | Declaration of Joseph A. Beavo, Ph.D. | 3450-3451 |
| 53. | Declaration of David P. Rotella, Ph.D. | 3452-3453 |
| 54. | Declaration of Claus Roehrborn, M.D. | 3454-3455 |

**Volume 3: Exhibits Submitted in Connection with Defendant Eli Lilly & Company's
Consolidated Reply in Support of Its Motions for Summary Judgment on Indefiniteness,
Noninfringement, Anticipation and Willfulness and Motions To Exclude Testimony
(Dkt. Nos. 172, 173, 174, and 175)
Exhibit Nos. 55 Through 60, Provided on February 7, 2017**

| EXHIBIT | DESCRIPTION | APP. # |
|---|---|---|
| 55. | Excerpts from Claim Construction Hearing Transcript, held on June 23, 2016 | 3456-3464 |
| 56. | Excerpts from Deposition Transcript of John Jarosz, dated February 7, 2017 (*Draft Transcript*) | 3465-3471 |
| 57. | Declaration of Cynthia Hetherington and Exhibit A attached thereto | 3472-3478 |
| 58. | Declaration of Heather Johnson and Exhibit A attached thereto | 3479-3492 |
| 59. | Corrected Responsive Report of David P. Rotella, Ph.D., dated January 17, 2017 | 3493-3494 |
| 60. | Declaration of Yan Wang and Exhibit A attached thereto | 3495-3497 |

Eli Lilly and Company ("Lilly") hereby moves for the exclusion of evidence and argument that is irrelevant, confusing, prejudicial, or which has not been properly disclosed pursuant to the Federal Rules of Civil Procedure or this Court's Docket Control Orders, namely:

(1)     UroPep provided interrogatory responses in this lawsuit that identified the evidentiary basis for its claims of willful infringement, yet UroPep has made completely different arguments in opposition to Lilly's pending motion for summary judgment on willful infringement. UroPep's new arguments are convoluted, misstate the record, and were never before disclosed. If the Court does not grant Lilly's motion for summary judgment, the Court should limit UroPep's evidence at trial on willfulness to the evidence cited in UroPep's interrogatory responses, and exclude all other evidence.

(2)     UroPep has repeatedly cited patents in its briefing that are neither related to the asserted patent in this case ("the '124 Patent") nor prior art to the '124 Patent in an attempt to bolster the '124 Patent's disclosure and claims. For example, UroPep has relied upon Lilly's U.S. Patent No. 6,451,807 ("the '807 Patent") in its Corrected Opposition to Lilly's past motions for summary judgment for noninfringement and lack of written description (Dkt. 132 at 14–15, 38–39) and also in the current summary judgment briefing (Dkt. 189 at 1, 13–17). UroPep's attempt to bolster the '124 Patent by reference to unrelated patents with different disclosures and claims is improper. All such arguments should be excluded.

(3)     UroPep has signaled that it intends to argue that the '124 Patent is entitled to a "presumption of validity" before the jury. As other district courts have found, such arguments are confusing, prejudicial and improper as the Court will instruct the jury on the applicable burden of proof for Lilly's invalidity challenge, which addresses the presumption. This Court should bar UroPep from further arguing that the '124 Patent is, additionally, presumed valid.

## I.   LEGAL AUTHORITY

Under the Federal Rules of Evidence, the Court may exclude evidence that is not relevant. Relevant evidence "(a) [] has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. "Irrelevant evidence is not admissible." Fed. R. Evid. 402. Even if relevant, the Court may exclude evidence if its probative value is substantially outweighed by the danger of unfair prejudice. Fed. R. Evid. 403.

The Court also possesses wide discretion to exclude untimely-produced documents and opinions. Thus, Federal Rule of Civil Procedure 26(a)(2)(B) requires expert reports' disclosure of, among other things: "(i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; [and] (iii) any exhibits that will be used to summarize or support them[.]" A party must supplement Rule 26(a) disclosures "in a timely manner." Fed. R. Civ. P. 26(e)(1)(A). Subject to the Court's discretion, Rule 37(c)(1) provides that the failure to provide information "as required by Rule 26(a) or (e)" may result in the exclusion of the information for use at trial, "unless the failure was substantially justified or is harmless."

The court's exclusion of evidence will not be reversed unless the party failing to produce the evidence was substantially justified in doing so or the failure was harmless. *See Kam Hing Enters., Inc. v. Wal-Mart Stores, Inc.*, 359 F. App'x 235, 237 (2d Cir. 2010) (citing *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 150 (2d Cir. 1997); *cf. Sims v. Blot*, 534 F.3d 117, 132 (2d Cir. 2008) ("A district court has abused its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence, or rendered a decision that cannot be located within the range of permissible decisions." (internal citations, alterations, and quotation marks omitted)).

## II.    ARGUMENT

### A.    The Court Should Exclude All Undisclosed Argument and Purported Evidence of "Willful" Infringement.

Lilly has moved for summary judgment on (among other things) UroPep's claim that Lilly willfully infringes the '124 Patent. Lilly's motion was based upon discovery in the lawsuit, including UroPep's interrogatory responses that recite the evidence allegedly supporting UroPep's willful infringement claim. Lilly Ex. 31[1], UroPep Interrogatory Responses, at 12–13. In its opposition brief, UroPep makes limited reference to its discovery responses or the record evidence, but instead makes a wide range of accusations that it never before made in the case. *See* UroPep's Comb. Opp. Br. (Dkt. 189) at 29–31. Many of UroPep's new arguments consist of purported (and wrong) accusations regarding Lilly's conduct during the *Markman* process or other Court hearings. There is no basis for any of this asserted new "evidence" to be introduced before the jury. If Lilly's summary judgment motion is not granted, UroPep's willfulness case at trial should be limited to the evidence in its interrogatory responses—nothing more.

Under the Supreme Court's recent decision in *Halo Electronics, Inc. v. Pulse Electronics, Inc.*, 136 S. Ct. 1923 (2016), a court should consider "[t]he subjective willfulness of a patent infringer, intentional or knowing . . . without regard to whether his infringement was objectively reckless." *Id.* at 1933. Willful infringement claims are not supported in a typical patent infringement case, such as the one here, but are reserved for those involving "egregious infringement behavior" that has been described as "willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate." *Id.* at 1932. To determine whether an accused infringer's conduct was subjectively willful, the Court must

---

[1] All citations to Lilly Exhibits ("Lilly Ex.") are those submitted in Lilly's Joint Appendix in support of its pending summary judgment and *Daubert* motions. Citations to UroPep Exhibits ("UroPep Ex.") refer to UroPep's submissions with its pending partial summary judgment motion and oppositions to Lilly's recent filings.

"measure[]" the accused infringer's "culpability . . . against the knowledge of the actor at the time of the challenged conduct." *Id.* at 1933. The Supreme Court made clear that enhanced damages "should generally be reserved for egregious cases typified by willful misconduct" and not awarded in "garden-variety cases." *Id.* at 1934–35.

To support its allegations of willfulness, UroPep's interrogatory responses asserted only that (1) it notified Lilly of an earlier patent (UroPep's "'061 patent"), which is not asserted in this case; (2) it notified Lilly of the '124 Patent in October 2014, after the '124 Patent issued; and (3) Lilly has continued to promote the sale of Cialis® to treat the signs and symptoms of BPH. Lilly Ex. 31 at 12–13. UroPep concedes that the promotion of Cialis® does not infringe the '061 patent, and thus providing notice of the '061 patent is irrelevant to whether Lilly allegedly willfully infringed the '124 Patent. *State Indus., Inc. v. A.O. Smith Corp.,* 751 F.2d 1226, 1236 (Fed. Cir. 1985) ("To willfully infringe a patent, the patent must exist and one must have knowledge of it." (emphasis omitted)). Without the irrelevant argument about notifying Lilly of the '061 patent, UroPep's willfulness argument boils down to that it notified Lilly of the '124 Patent and Lilly continues its sale of Cialis®.

Lilly, however, was already selling Cialis® for the treatment of the signs and symptoms of BPH nearly 3 years **before** the '124 Patent issued.[2] "A finding of willful infringement requires knowledge of the patent, and activity begun without knowledge of the patent generally cannot form the basis for a finding of willfulness." *AdvanceMe Inc. v. RapidPay, LLC,* 509 F. Supp. 2d 593, 608 (E.D. Tex. 2007).

Conscious that its evidence of willful infringement falls far short of the standard, UroPep created a new set of arguments in its recent summary judgment opposition brief, asserting, among other things, that Lilly did not meet the Court's Docketing Orders or took unreasonable

---

[2] The FDA approved the use of Cialis to treat BPH on October 6, 2011. The '124 Patent issued on July 29, 2014.

claim construction positions. *See* Comb. Opp. Br. (Dkt. 189) at 29–31. None of these allegations are in UroPep's interrogatory response that discloses the grounds for UroPep's willfulness case. Lilly Ex. 31 at 12–13. They also misstate the record: as the Court may recall, the Court invited the earlier round of summary judgment briefing. Lilly Ex. 55, *Markman* Tr., at 8:7–11 (noting that the Court would be "interested in hearing why that is not a purely functional description that is subject to analysis under the means-plus-function provision Section 112, Paragraph (6). It may not be, but I am going to be interested in hearing why it's not, if it's not."). In fact, as the Court has remarked, "this is a very strange patent." *Id.* at 55:13.

Federal Rule of Civil Procedure 37(c)(1) provides that failure to provide discovery and supplementation "as required by Rule 26(a) or (e)" may result in the exclusion of the information for use at trial, "unless the failure was substantially justified or is harmless." UroPep does not have any justification—much less substantial justification—for its untimely disclosure of additional materials and theories. Moreover, UroPep's convoluted (and incorrect) tale of alleged procedural violations and disputes over the law will not be understandable to a lay juror, who lacks both the necessary context and background to understand them. It would also essentially make the Court a witness in the case, as UroPep's new arguments implicate the parties' exchanges with the Court at the prior *Markman* (and other) hearings.

UroPep's untimely arguments and allegations are harmful and prejudicial to Lilly. They should be excluded under Rule 37(c)(1), as well as Federal Rule of Evidence 403. If UroPep is permitted to present a willful infringement claim, it should be limited to the evidence disclosed in its interrogatory response. Lilly Ex. 31 at 12–13.

**B.     The Court Should Exclude Evidence or Argument Regarding Inferences as to the Validity, Infringement, Meaning, or Scope of the '124 Patent Drawn from Unrelated Patents.**

Lilly intends to show that the '124 Patent is invalid because it fails to meet requirements for patentability, including the written description and enablement requirements. Rather than focus its response on the disclosures made in the '124 Patent and the sufficiency of those disclosures as compared to the '124 Patent's claims, however, UroPep's arguments to date indicate an intent to confuse the jury by comparing the '124 Patent to other unrelated patents issued to Lilly and third parties (*e.g.*, Pfizer). For example, UroPep has sought to compare the '124 Patent to Lilly's U.S. Patent No. 6,451,807 ("the '807 Patent") in both its present and past summary judgment briefing. *See* UroPep's Corr. Opp. to Lilly's S.J. of Noninfringement and under the Written Descr. Req. (Dkt. 132) at 14–15, 38–39; Comb. Opp. to Lilly's S.J. of Indefiniteness and Noninfringement (Dkt. 189) at 1, 13–17. Among other things, UroPep cited to the '807 Patent to try to demonstrate that the '124 Patent is valid, and/or that its disclosure and claims are normal, acceptable and/or definite. *Id.*

None of these arguments are proper under the law, and all such argument and evidence should be excluded under (at least) Federal Rules of Evidence 401 and 403. As the Court is aware, compliance with the written description and enablement requirements is to be determined based on the disclosure of the '124 Patent. *See, e.g.*, *Genentech, Inc. v. Novo Nordisk A/S*, 108 F.3d 1361, 1366 (Fed. Cir. 1997). The '124 Patent's claims are measured against its disclosure, not the disclosure of other patents. *Id.* Furthermore, what is (or is not) sufficient for the '124 Patent is not affected by the different disclosures and claims in other patents; indeed, even within a *single* patent, each claim stands or falls on its own. *See Ortho Pharm. Corp. v. Smith*, 959 F.2d 936, 942 (Fed. Cir. 1992) (validity of each claim must be considered individually). One cannot compare two unrelated patents, filed months or years apart, and make a meaningful assessment

of the patentability of either one: Their specifications will be different, their filing dates will be different, their prosecution histories will be different, and their claims will be different. The arguments UroPep has made and intends to make again are entirely irrelevant to the issues to be decided by the jury and would be unfair, confusing and unduly prejudicial.

UroPep's own arguments regarding the '807 Patent demonstrate that it, and other patents that UroPep has cited in the course of this lawsuit, are not comparable the '124 Patent. For example, the '807 Patent's claims require a minimum of a 100-fold selectivity ratio in the inhibition of different PDEs, not a 20-fold ratio that the Court has found applicable to the '124 Patent's claims. *See* UroPep Ex. 12 (Dkt. 189-12), '807 Patent, col. 20:45–56. All other things equal, a 100-fold ratio allows for a greater margin for error in the measurements of IC50 values and excludes more marginal cases than the '124 Patent's stricter 20-fold ratio. The '807 Patent claims further require that the inhibitor has to have an IC50 value of less than 10 nM; the '124 Patent has no minimum IC50 value for potency. Moreover, the claims of the '807 Patent are actually limited to compounds that are 100 times more potent to PDE5 than PDE6 (something UroPep says in its current summary judgment briefing could not be done with any compound in 1997) and 1000 times more selective to PDE1c. The '807 Patent further contains (literally) page after page of specific descriptions of the IC50 assay and test conditions to use. Uropep Ex. 12 (Dkt. 189-12) '807 patent, col. 11:35-15:2. This kind of detail about the specific assay and experimental conditions to use is glaringly absent from the '124 Patent. And, of course, the validity of the '807 Patent (and others) is not at issue in this case so UroPep's underlying assumption for its comparison—that the claims in the '807 Patent and others are valid—has not been tested.

It is for these reasons that UroPep's facile attempt to compare one limited aspect of the '807 Patent and the '124 Patent—*viz.,* they both use $IC_{50}$ values to measure selectivity—is neither relevant nor proper evidence regarding the '124 Patent's scope, disclosure, or validity. But they also point to an additional reason to prevent UroPep from trying to use various other patents with different disclosures and different claims to try to prop up the validity of the '124 Patent. In order to even try to understand UroPep's comparison argument(s), one would need to fully understand the disclosures of patents that are not in this case.

Indeed, such evidence would be confusing to a lay jury, to say the least, assuming it could be done at all. It is difficult enough for a juror to understand complicated legal concepts as written description and enablement, without having the further confusion of introducing the *unrelated* patents of Lilly or others into the mix. Moreover, there is no expert witness in the case who will (or could) lead the jury through such a detailed discussion, as both side's experts have (rightly) focused their review on the patent in suit and the prior art, not extraneous patents that are not part of the claims and defenses that will be tried.

The '124 Patent stands on its own terms, and not on the shoulders of any of the other, unrelated patents. The Court should preclude any argument, evidence, testimony, insinuation, reference, or assertion relating to unrelated patents of Lilly or others in connection with any claim or defense of validity, invalidity, meaning or scope pursuant to at least Fed. R. Evid. 401 and 403.

### C.    The Court Should Preclude UroPep from Referring to a "Presumption of Validity" at Trial.

Courts routinely preclude parties from referring to a presumption of validity at trial and prefer simply to explain the parties' respective burdens of proof. *Chiron Corp. v. Genentech, Inc.*, 363 F.3d 1247, 1258–59 (Fed. Cir. 2004) (affirming district court decision not to instruct

jury on the presumption of validity because the jury had applied the clear and convincing evidence standard); *Alloc, Inc. v. Pergo, Inc.*, No. 02-C-0736, 2007 WL 5289735, at *1 (E.D. Wis. Nov. 21, 2007) ("In the interest of making concepts as clear to the jury as possible, the court will direct that the parties refrain from referring to the 'presumption of validity,' since the parties may refer to the same concept as the Alloc Parties' burden of proof."); *Voda v. Cordis Corp.*, No. CIV-03-1512-L, 2006 WL 5347777, at *3 (W.D. Okla. May 10, 2006) (precluding reference to a presumption, instead instructing jury regarding burden of proof); *Server Tech., Inc. v. Am. Power Conversion Corp.*, No. 3:06-CV-00698-LRH, 2014 WL1308617, at *4 (D. Nev. Mar. 31, 2014) (same); *see also Avia Grp. Int'l, Inc. v. L.A. Gear Cal., Inc.*, 853 F.2d 1557, 1562 (Fed. Cir. 1988) (the presumption of validity "does not constitute 'evidence' to be weighed against a challenger's evidence").

The instructions to the jury regarding the parties' respective burdens of proof—specifically, Lilly's burden of proving invalidity by clear and convincing evidence—is sufficient without being bolstered by evidence or argument regarding a "presumption of validity" that suggests an additional, and perhaps even higher, standard of proof than clear and convincing evidence. This Court should bar references to the "presumption of validity" for the reasons stated in prior cases and in accordance with Rule 403.

Dated: February 7, 2017                By: /s/Jon B. Hyland
                                       Jon B. Hyland
                                       BARNES & THORNBURG LLP
                                       2100 McKinney Avenue, Suite 1250
                                       Dallas, Texas 75201
                                       Telephone: (214) 258-4123
                                       jon.hyland@btlaw.com

                                       Todd G. Vare
                                       Jeff M. Barron
                                       BARNES & THORNBURG LLP
                                       11 South Meridian Street
                                       Indianapolis, Indiana 46204
                                       Telephone: (317) 231-7735
                                       todd.vare@btlaw.com
                                       jeff.barron@btlaw.com

                                       Felicia J. Boyd (admitted pro hac vice)
                                       BARNES & THORNBURG LLP
                                       225 South Sixth Street, Suite 2800
                                       Minneapolis, Minnesota 55402
                                       Telephone: (612) 333-2111
                                       felicia.boyd@btlaw.com

                                       *Attorneys for Defendant*
                                       *Eli Lilly and Company*

## CERTIFICATE OF CONFERENCE

The undersigned certifies that a meet and confer was held on February 2, 2017, between counsel for the parties, at which time counsel discussed various potential motions in limine. Agreement was reached on certain of the issues, but not all of them. Plaintiff informed Defendant that this motion is OPPOSED.

/s/ Jon B. Hyland
Jon B. Hyland

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A). Pursuant to Fed. R. Civ. P. 5(d) and Local Rule CV-5(d) and (e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by email and/or fax, on this the 7th day of February, 2017.

/s/ Jon B. Hyland
Jon B. Hyland