**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| ERFINDERGEMEINSCHAFT UROPEP GbR,<br><br>Plaintiff,<br><br>v.<br><br>ELI LILLY AND COMPANY, and BROOKSHIRE BROTHERS, INC.,<br><br>Defendants. | ) | CASE No. 2:15-cv-01202-WCB |

# <u>PLAINTIFF UROPEP'S MOTION FOR ONGOING ROYALTIES</u>

## TABLE OF CONTENTS


I. UroPep Is Entitled To Ongoing Royalties ........ 1

II. The Court Should Award UroPep At Least A 15% Ongoing Royalty Rate ........ 4

A. [redacted] ........ 5

1. [redacted] ........ 8

2. UroPep Is Entitled To An Ongoing Royalty Rate That Is At Least 3.6 Times The Rate For Pre-Trial Infringement ........ 10

B. UroPep's Post-Verdict Bargaining Power ........ 12

C. Post-Verdict Royalties Should Be Enhanced Due To Lilly's Willfulness ........ 13

D. Calculation Of Post-Verdict Royalties ........ 15

CONCLUSION ........ 15

# TABLE OF AUTHORITIES

## Cases

*ActiveVideo Networks, Inc. v. Verizon Commcn's, Inc.*,
694 F.3d 1312 (Fed. Cir. 2012) .......... 4, 12

*ActiveVideo Networks, Inc. v. Verizon Commcn's, Inc.*,
827 F. Supp. 2d 641 (E.D. Va. 2011) .......... 12

*Affinity Labs of Tex., LLC v. BMW N. Am., LLC*,
783 F. Supp. 2d 891 (E.D. Tex. 2011) .......... 2

*Amado v. Microsoft Corp.*,
517 F.3d 1353 (Fed. Cir. 2008) .......... 4, 12

*Bianco v. Globus Med., Inc.*,
53 F. Supp. 3d 929 (E.D. Tex. 2014) .......... 2, 5

*Creative Internet Advert. Corp. v. Yahoo! Inc.*,
674 F. Supp. 2d 847 (E.D. Tex. 2009) .......... 4

*Finjan, Inc. v. Secure Computing Corp.*,
626 F.3d 1197 (Fed. Cir. 2010) .......... 2

*Fractus, S.A. v. Samsung Elecs. Co.*,
No. 6:12-cv-421, 2012 WL 12897386 (E.D. Tex. Aug. 10, 2012) .......... 4

*Internet Machs. LLC v. Alienware Corp.*,
No. 6:10-cv-23, 2013 WL 4056282 (E.D. Tex. June 19, 2013) .......... 4

*Mikohn Gaming Corp. v. Acres Gaming, Inc.*,
No. CV-S-97-1383-EJW (LRL), 2001 U.S. Dist. LEXIS 23416 (D. Nev. Aug. 1, 2001) .......... 3

*Mondis Tech. Ltd. v. Chimei InnoLux Corp.*,
822 F. Supp. 2d 639 (E.D. Tex. 2011) .......... 13

*Morpho Detection, Inc. v. Smiths Detection Inc.*,
No. 2:11-cv-498, 2013 U.S. Dist. LEXIS 150376 (E.D. Va. Oct. 17, 2013) .......... 2, 12

*Paice LLC v. Toyota Motor Corp.*,
504 F.3d 1293 (Fed. Cir. 2007) .......... 2

*Paice LLC v. Toyota Motor Corp.*,
609 F. Supp. 2d 620 (E.D. Tex. 2009) .......... 5

*Read Corp. v. Portec, Inc.*,
970 F.2d 816 (Fed. Cir. 1992) .......... 13

*Soverain Software LLC v. J.C. Penney Corp.*,
899 F. Supp. 2d 574 (E.D. Tex. 2012),
*rev'd in part on other grounds sub nom., Soverain Software LLC v. Newegg Inc.*,
705 F.3d 1333 (Fed. Cir. 2013) ........................................................................................ 13

*Telcordia Techs., Inc. v. Cisco Sys., Inc.*,
612 F.3d 1365 (Fed. Cir. 2010) .......................................................................................... 1

*VirnetX, Inc. v. Apple, Inc.*,
No. 6:13-cv-211, 2014 WL 12672822 (E.D. Tex. Mar. 6, 2014) ........................................... 13

*Whitserve LLC v. Comput. Packages, Inc.*,
694 F.3d 10 (Fed. Cir. 2012) .............................................................................................. 2

**Statutes**

35 U.S.C. § 283.................................................................................................................. 2

35 U.S.C. § 284.................................................................................................................. 2

**Rules**

Fed. R. Civ. P. 26(e) ........................................................................................................ 14

Fed. R. Civ. P. 30(b)(6)...................................................................................................... 14

UroPep moves for ongoing royalties on Lilly's sales of Cialis for BPH. The jury was presented with evidence of Lilly's infringing sales only up to the start of trial. UroPep's patent expires on July 9, 2017. To compensate UroPep for Lilly's ongoing infringement, the Court should award UroPep ongoing royalties on infringing sales not covered by the jury's verdict.

The jury's $20 million verdict reflects an approximately 2.8% royalty on Lilly's pre-trial infringing sales. That royalty rate should be significantly increased for Lilly's post-verdict infringement because the parties are in substantially different positions now than they were in October 2014, the date of the hypothetical negotiation considered by the jury. [redacted] And all of Lilly's post-verdict sales of Cialis for BPH through the expiration of the UroPep patent are a result of infringement. Lilly cannot argue that its post-verdict sales are a result of non-infringing promotion of Cialis for BPH (as it did at trial for pre-verdict sales) because the jury found Lilly has been infringing UroPep's patent for the last 2-1/2 years. The post-verdict rate should also be increased over the jury's award because UroPep is in a stronger negotiating position as a result of the jury's verdict and because Lilly's continued infringement of UroPep's patent is willful.

As explained below, the Court should impose a post-verdict royalty on sales of Cialis for BPH of at least 15%.

## I. UroPep Is Entitled To Ongoing Royalties

Where the jury's verdict was based only on pre-judgment infringement, an award of an ongoing royalty is appropriate to fully compensate the patentee for the defendant's infringement. *See Telcordia Techs., Inc. v. Cisco Sys., Inc.*, 612 F.3d 1365, 1379 (Fed. Cir. 2010) (concluding

that "[a]n award of an ongoing royalty is appropriate because the record supports the district court's finding that [plaintiff] has not been compensated for [defendant's] continuing infringement"). *See also Whitserve LLC v. Comput. Packages, Inc.*, 694 F.3d 10, 35-36 (Fed. Cir. 2012) (remanding for court to reconsider whether to award an ongoing royalty for post-verdict infringement where "the parties limited their damages arguments to past infringement rather than projected future infringement"); *Bianco v. Globus Med., Inc.*, 53 F. Supp. 3d 929, 932-34 (E.D. Tex. 2014) (awarding ongoing royalties in a trade secret misappropriation case, by analogy to the cases awarding post-verdict royalties in patent infringement lawsuits).[1]

"The authority for awarding prospective relief in the form of an ongoing royalty flows from 35 U.S.C. § 283, which permissively allows the entry of injunctions 'in accordance with the principles of equity.'" *Affinity Labs of Tex., LLC v. BMW N. Am., LLC*, 783 F. Supp. 2d 891, 897 (E.D. Tex. 2011) (quoting *Paice LLC v. Toyota Motor Corp.*, 504 F.3d 1293, 1314, 1315 n.16 (Fed. Cir. 2007)).[2]

---

[1] In *Bianco*, this Court noted that "[i]n patent cases in which a permanent injunction is sought, the Federal Circuit has held that a district court may impose a reasonable royalty on the defendant for future use…." *Id.* at 932. But district courts have not required that a patentee request an injunction before seeking ongoing royalties. *See, e.g.*, *Morpho Detection, Inc. v. Smiths Detection Inc.*, No. 2:11-cv-498, 2013 U.S. Dist. LEXIS 150376, at *24-25 (E.D. Va. Oct. 17, 2013) (awarding an ongoing royalty where "rather than pursuing a permanent injunction, [plaintiff's] damages motion seeks Court determination of an ongoing royalty rate, an equitable remedy that is sometimes appropriate in lieu of a permanent injunction"); Ex. A, *Arctic Cat Inc. v. Bombardier Recreational Prods., Inc.*, No. 14-cv-62369 (S.D. Fla. Jan. 3, 2017) (Dkt. 258, Order Awarding Ongoing Royalty and Prejudgment Interest) (awarding post-judgment royalties after plaintiff moved for an ongoing royalty but did not also move for a preliminary injunction). In any case, UroPep sought an injunction in its complaint and, in lieu of an injunction, an ongoing royalty. *See* Dkt. 1, Complaint, at 11.

[2] The Court's authority to award royalties for infringement that was not included in the jury's award also derives from 35 U.S.C. § 284. Section 284 provides that "the court shall award ... in no event less than a reasonable royalty," and "[w]hen damages are not found by a jury, the court shall assess them." *See Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1212-13 (Fed. Cir. 2010) (reversing district court's refusal to award damages between the entry of judgment

Here, the jury was presented with evidence of infringement only up to the start of trial. Both parties' experts based their damages analyses on the infringing sales Lilly had already made. UroPep's expert, Dr. Vellturo, testified as follows:

> Q. Okay. Now, we're going to talk about this next figure in some detail in a few minutes; but how many dollars worth of infringing sales ***has Lilly made***?
>
> A. $704.3 million. I think we saw that earlier.
> …
>
> Q. And you calculated a royalty rate of 12 percent, and we see the base here of 704.3 million. Based on these numbers, how much money do you believe Lilly should pay UroPep for infringing the BPH patent?
>
> A. So, a 12 percent royalty applied to $704 million of infringing sales leads to royalty damages of $84.5 million.

Ex. B (Trial Tr. at 403:3-6; 420:20-421:1) (emphasis added).

Lilly's expert, Mr. Jarosz, adopted Dr. Vellturo's estimate of $704.3 million in infringing sales for purposes of his analysis:

> Q. I want to show you a table from your report. This is a table from your supplemental report, right?
>
> A. Yes, or updated report. But I know what you are referring to.
>
> Q. And in this you show the $704.3 million of infringing sales. Do you see that?
>
> A. Yes, the alleged infringing sales. I have assumed infringement for my purposes.

---

and the time that the court issued an injunction against future infringement, noting that "the district court should have awarded compensation for any infringement prior to the injunction."). *See also Mikohn Gaming Corp. v. Acres Gaming, Inc.*, No. CV-S-97-1383-EJW (LRL), 2001 U.S. Dist. LEXIS 23416, at *63 (D. Nev. Aug. 1, 2001) (awarding royalties on infringing sales that were not covered by the jury's verdict where, like here, the experts did not have sales data covering the entire infringement period when they testified at trial).

> Q. You've adopted and incorporated that number right here into your analysis, right?
>
> A. Yes.

Ex. B (Trial Tr. at 1120:5-15). *See also* Dkt. 308-4, Vellturo Supp. Ex. 19 (calculating damages for infringement through April 16, 2017); Ex. C, Jarosz Updated Report, Tabs 3, 4 (same). Because the jury's award does not include compensation for post-verdict infringement, the Court should set an ongoing royalty to compensate UroPep for Lilly's continued infringement.

## II. The Court Should Award UroPep At Least A 15% Ongoing Royalty Rate

The amount of the ongoing royalty is "committed to the sound discretion of the district court." *Amado v. Microsoft Corp.*, 517 F.3d 1353, 1364 n.2 (Fed. Cir. 2008). "The Court is not bound by the prejudgment royalty rate found by the jury." *Fractus, S.A. v. Samsung Elecs. Co.*, No. 6:12-cv-421, 2012 WL 12897386, at *1 (E.D. Tex. Aug. 10, 2012) (citing *Amado*, 517 F.3d at 1361-62). But courts often use the jury's royalty rate as the starting point for setting a post-verdict royalty rate. *See, e.g.*, *Internet Machs. LLC v. Alienware Corp.*, No. 6:10-cv-23, 2013 WL 4056282, at *19-20 (E.D. Tex. June 19, 2013) ("The appropriate starting point for determining post-judgment damages lies with the jury's verdict."). While the jury's verdict provides a starting point for determining an ongoing royalty rate, "post-verdict infringement should typically entail a higher royalty rate than the reasonable royalty found at trial." *Creative Internet Advert. Corp. v. Yahoo! Inc.*, 674 F. Supp. 2d 847, 861 (E.D. Tex. 2009).

The Federal Circuit has instructed that, in setting a post-verdict royalty rate, a "district court may wish to consider … evidence of changes in the parties' bargaining positions and other economic circumstances." *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1343 (Fed. Cir. 2012). As this Court has previously explained:

> Courts in the Eastern District of Texas have … consistently looked to the jury's verdict as the 'starting point' for determining

> postjudgment damages …. They have then addressed how the changed circumstances would affect the royalty rate selected for purposes of calculating future damages. In so doing, the courts have often used the so-called *Georgia–Pacific* factors in assessing how the changed circumstances would produce a royalty rate in a hypothetical post-verdict licensing negotiation that was different from the royalty rate the jury selected based on a hypothetical licensing negotiation at the outset of infringement.

*Bianco*, 53 F. Supp. 3d at 933 (citations omitted). The future profit of infringement is an important factor in the "hypothetical post-verdict licensing negotiation." *See, e.g.*, *Paice LLC v. Toyota Motor Corp.*, 609 F. Supp. 2d 620, 627-30 (E.D. Tex. 2009) (examining Toyota's post-verdict profitability in setting an ongoing royalty rate).

In this case, the "hypothetical post-verdict licensing negotiation" should result in a significantly higher royalty rate than the rate the jury set for pre-trial infringement. First, the evidence establishes, and the parties' experts appear to agree [redacted] Second, courts routinely recognize that a prevailing plaintiff should command a higher royalty rate due to its increased post-verdict bargaining power. Third, Lilly's post-verdict infringement is willful, and the Court should enhance post-verdict damages. In light of these factors, the Court should award UroPep an ongoing royalty of at least 15%.

**A.** [redacted]

[redacted]

Lilly's profits on post-verdict sales of Cialis for BPH are due to Lilly's infringement of the UroPep patent. Regarding the October 2014 hypothetical negotiation, Lilly argued that the value of infringement (promotion of Cialis for BPH after October of 2014) was not significant because it could have stopped promoting Cialis for BPH in October 2014 – thus avoiding ever infringing the UroPep patent – and would still have sold over $150 million of Cialis for BPH based on its prior, non-infringing promotion. *See* Ex. B, Trial Tr. at 1127:7-16; 1130:7-15. In fact, this was the primary driver for Mr. Jarosz's disagreement with Dr. Vellturo about the value of Lilly's pre-trial infringement. Mr. Jarosz concluded that the value of Lilly's infringement was limited because a large portion of its pre-trial sales of Cialis for BPH were induced by promotion that occurred before Lilly learned of UroPep's patent in October 2014:

> Q. You and Dr. Vellturo have some disagreements about what would happen in the alternative world, the world where Lilly stops promoting Cialis for BPH, correct?
>
> A. ***I think we have one really important difference***, and that is he says the value of BPH -- Cialis used for BPH drops to zero except for those men who are taking Cialis for BPH on the day of the hypothetical negotiation.
>
> Q. So, the idea is there -- just so the jury understands -- that it is sometimes kind of hard to imagine this imaginary world that didn't happen. But what you're saying is that in that alternative world, physicians would still continue to prescribe, patients would continue to take Cialis to treat BPH so that Lilly would still make those sales even though it wasn't promoting those sales, correct?
>
> A. It would make some of those sales but not all of then [sic]. That's why I decline it. And remember, that's based on a great deal of economic literature. . . . All this knowledge would still continue after October of 2014. It doesn't just evaporate.
> ….
>
> Q. I just want to make sure we understand your position. This is an important disagreement you have with Dr. Vellturo, right?

A. Absolutely.

Q. The ongoing prescriptions of Cialis for BPH after Lilly off-label, that's an important disagreement, right?

A. Absolutely.

Q. And your position is that if Lilly went to the FDA, took these off the indications, said, "We can't do these because prescribing Cialis for BPH infringes a valid U.S. patent," that doctors would just keep on writing those prescriptions to the tune of over $150 million?

A. Many would, not all would. The model that I presented to the jury suggests that the prescribing rate would fall.

Ex. B, Trial Tr. at 1125:11-1126:16; 1129:25-1130:15 (emphasis added). *See also* Ex. E, Jarosz Report, Tab 25, Line 13 (calculating the number of patients taking Cialis after October 2014 who were induced to take Cialis by Lilly's pre-infringement promotion).

Critically, Mr. Jarosz's primary basis for disagreeing with Dr. Vellturo's estimate of Lilly's pre-trial profitability from infringement does not apply when assessing Lilly's profits from post-verdict sales of Cialis for BPH. The jury has now determined that Lilly has been infringing the UroPep patent for the past 2-1/2 years. There can be no dispute that Lilly's post-verdict sales of Cialis for BPH are induced by that infringement, including substantial sales that will occur beyond the expiration of the UroPep patent. Further, Lilly has continued to promote Cialis for BPH since receiving the jury's verdict, and apparently has no intention of ceasing to infringe the UroPep patent. *See, e.g.*, Ex. F, Screenshot of the Cialis.com website, last visited May 18, 2017. Thus, in a post-verdict hypothetical negotiation, both parties would understand that Lilly's sales of Cialis for BPH are induced by Lilly's infringing conduct.

Lilly's own expert concluded that, under the *Georgia-Pacific* factors, UroPep is entitled to [redacted] of profits due to infringement. *See* Ex. G, Jarosz Report ¶¶ 298, 300. In determining the

outcome of a post-verdict hypothetical negotiation, the Court would be well within its discretion to award UroPep a royalty of [redacted] on all sales of Cialis for BPH (i.e., [redacted] on post-verdict sales of Cialis).

At a minimum, the Court should award UroPep a 15% ongoing royalty. This ongoing royalty is supported by [redacted]

**1.** [redacted]

[redacted] According to Lilly's expert, Lilly earned [redacted] – on sales of Cialis for BPH – from its infringement between October 2014 and October 2016.[4] Mr. Jarosz's calculations also show that, [redacted]

---

[3] *See* Ex. B, Trial Tr. at 1079:4-1080:9. *See also*, [redacted]

[4] [redacted]

[redacted] is due in part to Mr. Jarosz's assessment that, in 2014 and 2015, a significant portion of Lilly's sales of Cialis for BPH were attributable to Lilly's pre-infringement promotion of Cialis for BPH. [redacted]

UroPep's expert also concluded that [redacted] He further concluded that [redacted]

[redacted]

| | [redacted] | [redacted] | [redacted] |
|---|---|---|---|
| [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] |

5 [redacted]

The following section discusses how to convert the [redacted] into a reasonable post-trial royalty rate that reflects the jury's verdict while taking into account the [redacted]

**2. UroPep Is Entitled To An Ongoing Royalty Rate That Is At Least 3.6 Times The Rate For Pre-Trial Infringement**

[redacted]

The jury's $20 million damages award, as applied to the $704.3 million in infringing sales presented to the jury, implies a royalty of 2.8%. Ex. D, Vellturo Decl. ¶ 9. [redacted]

[redacted]

| [redacted] | [redacted] | [redacted] | [redacted] |
|---|---|---|---|
| [redacted] | [redacted] | [redacted] | [redacted] |

The jury's verdict was closer to Mr. Jarosz's proposed $11 million than to Dr. Vellturo's proposed $84.5 million. So the post-verdict royalty rate should be closer to [redacted] than to [redacted] At a minimum, the post-trial rate should be 3.6 times the pre-trial rate, which is [redacted], and leads to a post-trial royalty rate just over 10%.

The above analysis holds fixed the relative bargaining power of the two parties at the levels applied by the experts for a hypothetical negotiation in October 2014. But UroPep's post-verdict royalty rate should be further enhanced, by at least 50%, to reflect UroPep's increased bargaining power, and to reflect that Lilly's post-verdict infringement is willful. Accordingly, UroPep should receive at least a 15% royalty on Lilly's ongoing infringing sales of Cialis.

---

[6] If Lilly contends that [redacted] then UroPep would be happy to instead extend both experts' models to July 9, 2017. Both parties' experts based their profitability analyses on an econometric model. *See* Ex. B, Trial Tr. at 399:1-403:2 (Vellturo); *see also id.* at 1069:12-1070:6; 1077:3-1079:25 (Jarosz). Those same models could be used to determine Lilly's profitability from its sales of Cialis for BPH from April 17, 2017 through July 9, 2017. If the Court believes this would be a more reliable approach for determining the ongoing royalty rate, then UroPep would request that the Court set a timeframe for Lilly to produce relevant financial data through July 9, and for the parties to thereafter submit briefs and expert declarations addressing that data.

### B. UroPep's Post-Verdict Bargaining Power

Courts have recognized that a prevailing plaintiff has greater bargaining power and should therefore extract a higher royalty. *See Amado*, 517 F.3d at 1361-62 ("There is a fundamental difference [] between a reasonable royalty for pre-verdict infringement and damages for post-verdict infringement. Prior to judgment, liability for infringement, as well as the validity of the patent, is uncertain, and damages are determined in the context of that uncertainty. Once a judgment of validity and infringement has been entered, however, the calculus is markedly different….") (internal citation omitted). *See also ActiveVideo*, 694 F.3d at 1343 ("[A]n assessment of prospective damages for ongoing infringement should take into account the change in the parties' bargaining positions, and the resulting change in economic circumstances, resulting from the determination of liability…").

The change in bargaining power alone would justify more than doubling the jury's royalty. In *ActiveVideo Networks, Inc. v. Verizon Communications, Inc.*, 827 F. Supp. 2d 641 (E.D. Va. 2011), the district court granted an injunction, but then stayed the injunction pending appeal. The court set a "sunset royalty rate" while the injunction was stayed. *Id.* at 655. The court concluded that, in large part due to the plaintiff's increased post-verdict bargaining power, the plaintiff was entitled to more than double the rate that the jury had awarded. *Id.* at 658.[7] The Federal Circuit affirmed, stating that "[t]he district court is correct; there has been a substantial shift in the bargaining position of the parties." *ActiveVideo*, 694 F.3d at 1342 (citation omitted); *cf. Morpho Detection*, 2013 U.S. Dist. LEXIS 150376, at *28-29 (awarding post-judgment

---

[7] The jury awarded the plaintiff 16% of defendant's profits. *See* Ex. I, *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, No. 2:10-cv-248 (E.D. Va. Nov. 3, 2011), Memorandum Regarding the Appropriate Post-Judgment, Pre-Injunction Royalty Rate, Dkt. 1171 at 3 (noting that "[t]he jury's verdict can also be expressed as an allocation to ActiveVideo of 16% (or 1/6) of the incremental profit derived from Verizon's use of the patented technology"). The court awarded an ongoing royalty of 40% of the profit. *See ActiveVideo*, 827 F. Supp. 2d at 658.

royalties 25% higher than the pre-trial rate because of the "compelling argument" that, post-verdict, the prevailing plaintiff "was in a far superior bargaining position").

In this case, Lilly ignored UroPep's pre-trial licensing overtures. *See* Ex. B, Trial Tr. 455:16-21. Following the jury's verdict, UroPep is in a far stronger bargaining position, and its royalty rate should reflect UroPep's increased bargaining power.

### C. Post-Verdict Royalties Should Be Enhanced Due To Lilly's Willfulness

"[A]bsent unusual circumstances, a defendant's continued infringement after it is an adjudicated infringer is willful—even before appeal." *Mondis Tech. Ltd. v. Chimei InnoLux Corp.*, 822 F. Supp. 2d 639, 651 (E.D. Tex. 2011) (enhancing post-verdict royalties due to willfulness). *See also Soverain Software LLC v. J.C. Penney Corp.*, 899 F. Supp. 2d 574, 590 (E.D. Tex. 2012) ("The jury, supported by substantial evidence, determined that Defendants infringe and that the patents are not invalid. Thus, should Defendants continue infringing, they do so in a willful manner. Taking all of the *Read* factors into consideration, a 2.5x enhancement to the jury's implied royalty rate is appropriate."), *rev'd in part on other grounds sub nom.*, *Soverain Software LLC v. Newegg Inc.*, 705 F.3d 1333 (Fed. Cir. 2013); *VirnetX, Inc. v. Apple, Inc.*, No. 6:13-cv-211, 2014 WL 12672822, at *4 (E.D. Tex. Mar. 6, 2014) (enhancing royalties by 50% due to post-verdict willfulness).

In *Read*, the Federal Circuit set-forth nine factors for determining whether to enhance damages for willful infringement. *See Read Corp. v. Portec, Inc.*, 970 F.2d 816, 827 (Fed. Cir. 1992).[8] In this case, at least the following six of those factors favor enhancing damages:

---

[8] The *Read* factors are: (1) whether the infringer deliberately copied the ideas or design of another; (2) whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed; (3) the infringer's behavior as a party to the litigation; (4) defendant's size and financial condition; (5) closeness of the case; (6) duration of defendant's misconduct; (7)

*Factor One – Copying*: Lilly relied heavily on UroPep's inventors' ideas to support their FDA application for the BPH indication. Ex. B, Trial Tr. at 1046:21-1047:2. And when Lilly sought its own patent on Cialis for BPH, Lilly cited UroPep's then-pending patent application, and copied copiously from that application. *See* Ex. B, Trial Tr. at 1044:18-1046:4.

*Factor Two – Good Faith Belief of Non-Infringement or Invalidity*: Lilly has never presented any evidence that it believed UroPep's patent was invalid or not infringed. In any case, now that the jury has definitively rejected Lilly's invalidity defenses, Lilly cannot claim to have a reasonable belief of non-infringement or invalidity.

*Factor Three – Lilly's Litigation Conduct*: Lilly's failure to produce the [redacted] IntelGenX agreement until UroPep discovered it during trial weighs in favor of enhancing post-verdict royalties. UroPep accepts Mr. Vare's representation that Lilly's outside counsel was not aware of the new agreement. *See* Ex. B, Trial Tr. at 641:11-13. But Lilly's in-house counsel was aware of the new agreement, and either knew or should have known that Lilly was required to supplement its earlier disclosures to identify the [redacted] license. *See* Fed. R. Civ. P. 26(e). Lilly designated an in-house lawyer – Steven Caltrider – to testify as a 30(b)(6) witness regarding the earlier [redacted] IntelGenX term sheet agreement. *See* Ex. J, December 9, 2016 email from Vare to Knobloch. At his deposition, Mr. Caltrider testified that [redacted]. Ex. K, Caltrider Dep. at 97:21-98:10. Mr. Caltrider was presumably also aware of the [redacted] agreement. Mr. Caltrider was present in Court for portions of the trial, thus demonstrating his continued involvement in the litigation. In light of these circumstances, Lilly's failure to timely disclose this document counsels in favor of enhancing post-trial royalties.

---

remedial action by the defendant; (8) defendant's motivation for harm; and (9) whether defendant attempted to conceal its misconduct.

*Factor Four – Lilly's Size And Financial Condition*: Lilly earned over $21 billion in revenue in 2016. *See* Ex. L, Lilly's 2016 10-K at 28. Lilly closed 2016 with over $4.5 billion in cash. *Id.* at 43. Enhancing post-verdict royalties will not significantly impact Lilly's finances.

*Factor Five – Closeness of the Case*: In light of the jury's verdict for UroPep, the case is not close. Lilly clearly infringes UroPep's valid patent.

*Factor Seven – Remedial Action by Lilly*: Lilly has continued to promote Cialis for BPH since the jury's verdict. Lilly has taken no action to avoid infringing UroPep's patent.

Taking all these factors into account, UroPep's post-verdict royalties should be enhanced, by at least 50%, to account for Lilly's post-verdict willfulness.

### D. Calculation Of Post-Verdict Royalties

In light of [redacted], UroPep's increased bargaining power, and Lilly's willfulness, UroPep is entitled to at least a 15% royalty on Lilly's post-verdict infringing sales. Both parties relied on Dr. Vellturo's conclusion that [redacted] of Lilly's sales of Cialis 5mg between March and April 2017 were made to treat BPH or BPH+ED.[9] [redacted] *See* Ex. D, Vellturo Decl. ¶ 13. The Court should thus award UroPep at least a 15% royalty on [redacted] of Lilly's 5mg Cialis sales (or, equivalently, a [redacted] royalty on all 5mg Cialis sales).

## CONCLUSION

For the foregoing reasons, UroPep respectfully requests that the Court award UroPep at least a 15% royalty on Lilly's sales of Cialis for BPH after April 16, 2017.

[9] Dr. Vellturo estimated that at least [redacted] of Cialis 5mg sales in March and April 2017 would be made to treat BPH, or BPH +ED. *See* Dkt. 308-4, Vellturo Supp. Ex. 19A. Lilly's expert relied upon that estimate to calculate the royalties owed to UroPep for March and April 2017. *See* Ex. C, Jarosz Supp. Report ¶ 5.

Date: May 19, 2017

Respectfully submitted,

By: /s/ *John M. Hughes*

Melissa R. Smith (State Bar No. 24001351)
GILLAM & SMITH, LLP
303 South Washington Ave.
Marshall, TX 75670
(903) 934-8450
melissa@gillamsmithlaw.com

John M. Hughes (Col. Bar No. 38295)
Nosson D. Knobloch (Col. Bar No. 42134)
BARTLIT BECK HERMAN
PALENCHAR & SCOTT LLP
1899 Wynkoop Street, Suite 800
Denver, CO 80202
(303) 592-3100
john.hughes@bartlit-beck.com
nosson.knobloch@bartlit-beck.com

Adam K. Mortara (Ill. Bar No. 6282005)
J. Scott McBride (Ill. Bar No. 6277988)
Benjamin J. Whiting (Ill. Bar No. 6307321)
Alex L. Groden (Ill. Bar No. 6320709)
BARTLIT BECK HERMAN
PALENCHAR & SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, IL 60654
(312) 494-4400
adam.mortara@bartlit-beck.com
scott.mcbride@bartlit-beck.com
ben.whiting@bartlit-beck.com
alex.groden@bartlit-beck.com

**ATTORNEYS FOR PLAINTIFF ERFINDERGEMEINSCHAFT UROPEP GbR**

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a) on May 19, 2017. As such, this document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A).

Date: May 19, 2017 By: */s/ John M. Hughes*

John M. Hughes (Colorado Bar No. 38295)
BARTLIT BECK HERMAN
PALENCHAR & SCOTT LLP
1899 Wynkoop Street, Suite 800
Denver, CO 80202
(303) 592-3100
john.hughes@bartlit-beck.com

**ATTORNEY FOR PLAINTIFF ERFINDERGEMEINSCHAFT UROPEP GbR**

**CERTIFICATE OF CONFERENCE**

Pursuant to Local Rule CV-7(i), the undersigned certifies that on May 9, 2017, counsel for Plaintiff and counsel for Defendant conducted a conference via telephone regarding the above motion. During this call, Defendant informed Plaintiff that this motion is opposed.

Date: May 19, 2017 By: */s/ John M. Hughes*