**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| ERFINDERGEMEINSCHAFT UROPEP GBR,<br><br>Plaintiff,<br><br>vs.<br><br>ELI LILLY AND COMPANY<br><br>Defendant. | Court File No.: 2:15-cv-01202-WCB<br><br>**JURY TRIAL DEMANDED** |

**DEFENDANT ELI LILLY & COMPANY'S OPPOSITION TO PLAINTIFF ERFINDERGEMEINSCHAFT UROPEP GBR'S MOTION FOR ONGOING REMEDIES**

# TABLE OF CONTENTS

Page


I. INTRODUCTION .......... 1

II. THE FEDERAL CIRCUIT HAS NEVER HELD THAT THERE IS AN ABSOLUTE RIGHT TO AN ONGOING ROYALTy .......... 2

A. UroPep Abandoned Its Claim To An Injunction Prior To Trial And Instead Presented Its Royalty Rate Analysis To The Jury .......... 2

B. UroPep Presented Its Royalty Rate Analysis To The Jury .......... 3

C. UroPep's Motion Is Unsupported By The Case Law That It Cites .......... 5

D. The Court Should Exercise Its Discretion And Award No Ongoing Royalties Or, If It Does Award Royalties, Award Them At The Jury's Implied 2.8% Rate .......... 8

III. UROPEP'S METHOD FOR CALCULATING THE PROPER ROYALTY RATE IS DEEPLY FLAWED AND FAILS TO FOLLOW THE CASE LAW .......... 10

A. UroPep Does Not Follow Its Own Authority .......... 10

B. A Proper Analysis Supports A 2.8 Percent Royalty, As The Jury Found, And Should In No Event Exceed 3 Percent .......... 12

C. There Is No Basis For Enhancement Under The *Read* Factors .......... 13

IV. CONCLUSION .......... 14

# TABLE OF AUTHORITIES

**Page(s)**

**U.S. Constitution**

Seventh Amendment....................3

**Cases**

*ActiveVideo Networks, Inc. v. Verizon Communs., Inc.*, 694 F.3d 1312 (Fed. Cir. 2012)....................7

*Affinity Labs of Tex., LLC v. BMW N. Am., LLC*, 783 F. Supp. 2d 891 (E.D. Tex. 2011)....................7

*Allison v. Citgo Petroleum Corp.*, 151 F.3d 402 (5th Cir. 1988)....................9

*Amando v. Microsoft Corp.*, 517 F.3d 1353 (Fed.Cir. 2008)....................6, 7

*Ariba, Inc. v. Emptoris, Inc.*, 567 F.Supp.2d 914 (E.D. Tex. 2008)....................5

*Bianco v. Globus Med., Inc.*, 53 F.Supp.3d (E.D. Tex. 2014).....................7, 10

*Coppedge v. K.B.I., Inc.*, No. 9:05-CV-162, 2007 WL 1791717 (E.D. Tex. June 19, 2007)....................3

*Creative Internet Advert. Corp. v. Yahoo! Inc.*, 674 F. Supp. 2d 847 (E.D. Tex. 2009)....................7

*Dairy Queen, Inc. v. Wood*, 369 U.S. 469 (1962)....................9

*Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340. (1998)....................3

*Finjin, Inc. v. Secure Computing Corp.*, 626 F.3d 1197 (Fed.Cir. 2010)....................8

*Internet Machs. LLC v. Alienware Corp.*, No. 6:10-cv-23, 2013 WL 4056282 (E.D. Tex. June 19, 2013)....................7, 10

*Mikohn Gaming Corp. v. Acres Gaming, Inc.*, No CV-S-9701383-EJW (LRL) 2001 WL 34778689 (D. Nev. Aug. 2, 2001)....................8

*Paice LLC v. Toyota Motor Corp.*, 609 F. Supp. 2d 620 (E.D. Tex. 2009)....................6, 7, 10

*Power Integrations, Inc. v. Fairchild Semiconductor Intern., Inc.*,
711 F.3d 1348 (Fed. Cir. 2013)....................3, 5

*Rockwell Intern. Corp. v. U.S.*,
549 U.S. 457 (2007)....................1, 2

*Spine Sols., Inc. v. Medtronic Sofamor Danek, Inc.*,
928 F. Supp. 2d 956 (W.D. Tenn. 2011)....................8

*Telcordia Technologies, Inc. v. Cisco Sys., Inc.*, 612 F.3d 1365 (Fed. Cir. 2010) ....................6

*Whitserve LLC v. Computer Package, Inc.*,
694 F.3d 10 (Fed. Cir. 2012)....................2, 6

*Wilson v. Muckala*,
303 F.3d 1207 (10th Cir.2002) ....................3

**Statutes And Rules**

35 U.S.C. § 283.................... *passim*

35 U.S.C. § 284.................... *passim*

Fed. R. Civ. P. 16....................2

Fed. R. Civ. P. 26....................4

Fed. R. Civ. P. 59....................8, 9

## I. INTRODUCTION

UroPep's demand for an enhanced, 15% royalty rate for "post-verdict" infringement—more than five times the rate the jury awarded—is unsupported by the law and the record. Where the Federal Circuit has upheld a judicial determination of a new, enhanced royalty rate, it has been in the context of the exercise of the Court's equitable powers under 35 U.S.C. § 283. In the Pre-Trial Order, however, UroPep indicated that it was seeking only "post-verdict damages" under 35 U.S.C. § 284, did not request an injunction, and abandoned any claim under Section 283. Dkt. 251, p. 9 (¶ 2). UroPep thus waived any right to an enhanced royalty under Section 283. *Rockwell Intern. Corp. v. U.S.*, 549 U.S. 457, 474 (2007). The body of law cited by UroPep as a basis to invoke the Court's equitable powers under Section 283 to increase the royalty rate does not apply here; UroPep gave up that right before trial even started.

In a footnote, UroPep makes the alternative argument that the Court can award an enhanced royalty rate under Section 284. Motion, pp. 2-3, fn.2. This argument is also unavailing. UroPep presented a single royalty rate to the jury for the "infringement" without distinguishing between past or future conduct. Lilly countered with two alternative royalty rates. The jury then awarded royalties based upon an implied rate (2.8%) that closely matched one of Lilly's alternative rates (3%). Given UroPep's abandonment of its right to seek an injunction (along with the negotiating leverage that provides), the Court's determination that this case is not exceptional, and the entry of a Final Judgment that denied all other requests for relief,[1] any award of ongoing royalties should be capped at the rate determined by the jury (2.8%).

Finally, even if the Court re-considers the appropriate royalty rate, UroPep's reliance on a new opinion by Dr. Vellturo that post-verdict damages should be measured based upon Lilly's

---

[1] The Court rejected UroPep's form of judgment and instead entered a judgment that denied "[a]ll other requests for relief set forth in plaintiff's complaint," including UroPep's request for ongoing royalties in its Complaint. Dkt. 360, Judgment, ¶ 6; *compare* Dkt. 1, Prayer for Relief.

(assumed) profitability is flawed as a matter of law. Under the cases cited and relied upon by UroPep, the alleged profitability of the defendant is only one of many considerations in setting a post-trial royalty rate. Here, the '124 patent expires on July 9, 2017, less than 90 days from today, and Lilly has already paid, via the jury's verdict, for all of its pre-trial promotion of Cialis's BPH indication. Given the limited bundle of rights that UroPep was offering, if the parties engaged in a post-trial negotiation the post-trial royalty rate would not exceed 3%. *See* Ex. 1, Declaration of John Jarosz, ¶ 37.

## II. THE FEDERAL CIRCUIT HAS NEVER HELD THAT THERE IS AN ABSOLUTE RIGHT TO AN ONGOING ROYALTY

UroPep presumes that it is automatically entitled to an ongoing royalty at a rate determined by the Court. That is not the law. Rather, depending upon the record before the Court, "(1) it can grant an injunction; (2) it can order the parties to attempt to negotiate terms for future use of the invention; (3) it can grant an ongoing royalty; or (4) it can exercise its discretion to conclude that no forward-looking relief is appropriate in the circumstances." *Whitserve LLC v. Computer Package, Inc.*, 694 F.3d 10, 35 (Fed. Cir. 2012). In this case, it would be proper for the Court to exercise its discretion and reject any ongoing royalty. In the event that the Court does award an ongoing royalty, however, the proper royalty rate is the rate implied by the jury determination of damages: 2.8 percent of net sales associated with the BPH indication.

### A. UroPep Abandoned Its Claim To An Injunction Prior To Trial And Instead Presented Its Royalty Rate Analysis To The Jury

UroPep also errs in asserting that the Court's equitable powers under 35 U.S.C. § 283 can be a basis for awarding an enhanced royalty rate in this case. In fact, UroPep abandoned all of its Section 283 claims in the Final Pretrial Order. "[A] final pretrial order … supersede[s] all prior pleadings and 'control[s] the subsequent course of the action.'" *Rockwell*, 549 U.S. at 474 (quoting former Federal Rule of Civil Procedure 16(e), now at Rule 16(d) with the word

"subsequent" stricken). "Claims, issues, defenses, or theories of damages not included in the pretrial order are waived even if they appeared in the complaint[.]" *Coppedge v. K.B.I., Inc.*, No. 9:05-CV-162, 2007 WL 1791717, at *5, fn.6 (E.D. Tex. June 19, 2007) (quoting *Wilson v. Muckala*, 303 F.3d 1207, 1215 (10th Cir.2002)).

UroPep's Complaint sought an injunction against Lilly and an accounting of future royalties if UroPeo's request for an injunction was denied. Dkt. 1, Prayer for Relief, ¶¶ h & j. UroPep, however, included neither of these requests in the Final Pretrial Order. Dkt. 251. Instead, UroPep contended only that it "is entitled to recover both pre-verdict and post-verdict damages in the form of a reasonable royalty for the infringement of the '124 Patent by Lilly, together with prejudgment and post-judgment interest, costs, and attorneys' fees as provided by 35 U.S.C. §§ 284-85." *Id.*, p. 9 (¶ 2). Thus, UroPep waived its claims under Section 283, including any claim for a post-judgment royalty in lieu of an injunction.

**B. UroPep Presented Its Royalty Rate Analysis To The Jury**

UroPep is further mistaken that the jury's determination of an implied royalty rate of 2.8% is not binding on a post-trial royalty award (assuming any award is granted). The sole basis for UroPep's damages claim, Section 284, refers to damages resulting from "the infringement" and does not distinguish between pre-verdict or post-verdict infringement. 35 U.S.C. § 284. "[T]he consistent practice at common law was for juries to award damages." *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 353. (1998) (holding that a claim for statutory damages under Section 504(c) of the Copyright Act invokes a right to a jury trial under the Seventh Amendment). Moreover, "[w]here, as here, the jury returns a general verdict, we must 'presume[] the existence of fact findings implied from the jury's having reached that verdict.'" *Power Integrations, Inc. v. Fairchild Semiconductor Intern., Inc.*, 711 F.3d 1348, 1377 (Fed. Cir. 2013) (internal citations omitted).

At trial, UroPep's expert, Dr. Vellturo, proposed a 12% royalty rate applied to Lilly's revenues. Ex. 2, Trial Tr. at 420:1-421:1. Dr. Vellturo never distinguished between past and future activities in his testimony regarding the applicable royalty rate, but presented a single rate for the jury to consider for all of Lilly's alleged infringement. *Id.*

Lilly's expert, Mr. Jarosz, responded with two alternative rates. Mr. Jarosz first proposed that 30% rate assessed against the incremental profits associated with the BPH indication, which resulted in a revenue-based effective royalty rate of 1.6%. Ex. 3, Trial Tr. at 1092:16-1093:6. Mr. Jarosz also proposed a 3% rate that was primarily based on a recent license agreement that Lilly had executed relating to tadalafil (the IntelGenX nonexclusive term sheet), which he applied to Lilly's revenues. *Id.* at 1094:7-1095:17; Ex. 4 (Trial Ex. 1174). Like Dr. Vellturo, Mr. Jarosz never distinguished between past and future activity for either proposed rate.

UroPep's motion focuses on the fact that Dr. Vellturo and Mr. Jarosz applied their proposed royalty rates to the pretrial royalty *base*—*i.e.*, the incremental profits and revenues that existed at the time of trial. Motion at pp. 3-4. This argument misses the point. Neither expert testified that the royalty *rate* would change after trial. Moreover, if UroPep had wanted to present an alternative, post-trial royalty rate, it could and should have presented that analysis in Dr. Vellturo's pre-trial expert reports. Fed. R. Civ. P. 26(a)(2)(B)(i) (an expert report must contain a "complete statement of all opinions the witness will express and the basis and reasons for them"). The new royalty rate that Dr. Vellturo proposes for post-verdict sales is based solely on evidence in the *pre-trial* record. UroPep never once asserted during trial that it was carving out its claim for "post-verdict damages in the form of a reasonable royalty" under 35 U.S.C. § 284 for later determination by the Court. Dkt. 251, p. 9 (¶ 2). UroPep has no justification for offering a new opinion from Dr. Vellturo after trial and entry of Final Judgment. *Id.*

The jury had the '124 patent before it and was instructed as to its expiration date. Ex. 5, Trial Tr. at 1409:10-14. As neither party presented evidence of a lump-sum royalty, the only evidentiary basis for the jury to award damages was based on adopting a royalty rate. In accordance with the Pre-Trial Order, when the jury was asked to decide the amount of damages, it included a determination of the implied royalty rate applicable to the entire period of the "infringement." Ex. 5, Trial Tr. at 1431:6-1434:1; *Power Integrations*, 711 F.3d at 1377. The jury ultimately adopted a royalty rate of 2.8%, which was in the range of Mr. Jarosz's proposed royalty rates. Dkt. 335, Verdict Form (awarding $20 million in damages, which implies a 2.8% royalty rate). Therefore, if the Court awards an ongoing royalty, it should do so at a rate of 2.8%. *See Power Integrations*, 711 F.3d at 1377.[2]

### C. UroPep's Motion Is Unsupported By The Case Law That It Cites

Moreover, the circumstances of this case are unlike the circumstances of the cases relied upon by UroPep in support of its demand for an enhanced post-trial royalty rate. None of UroPep's cases involve a patentee, like UroPep, which abandoned any right to injunctive relief prior to trial and sought only "pre-verdict and post-verdict damages" under 35 U.S.C. § 284. A primary rationale for awarding a premium royalty rate above the rate that was awarded at trial is the threat of an injunction, which does not exist here. The '124 patent is also less than 90 days from expiring and the only rights that it could provide Lilly is the right to continue to advertise Cialis's already well-known BPH indication. The bundle of rights that UroPep had to offer in April 2017 was very limited.

---

[2] There is no legal impediment to a jury's determination of a royalty rate that will apply in the future. "Determining a percentage rate or royalty per item to be applied in the future in a patent case is no more difficult than the task commonly performed by jurors in federal and state courts, when asked to calculate loss of future earning capacity, future medical expenses, future pain and suffering, or future lost profits." *Ariba, Inc. v. Emptoris, Inc.*, 567 F.Supp.2d 914, 918 (E.D. Tex. 2008) (requiring the jury to determine future damages despite the fact that, unlike here, the patentee was seeking an injunction).

These limitations on both the nature and temporal scope of the post-trial license put UroPep in a weak negotiating position after trial. Thus, UroPep's post-trial position is unlike the positions of the patentees in the cases awarding an enhanced royalty under Section 283 (a statutory provision that, as noted, is not available to UroPep). For example, in *Paice LLC v. Toyota Motor Corp.*, the patentee sought a permanent injunction and did not seek an ongoing royalty at all. 504 F.3d 1293, 1302-03 (Fed. Cir. 2007). The district court denied the motion for an injunction and instead awarded ongoing royalties using its equitable powers under Section 283. *Id.* at 1313-1314. The Federal Circuit upheld the award, but remanded to the District Court for further analysis as to the amount of the ongoing royalty. *Id.* at 1314. The panel grounded its analysis in Section 283's power to "grant injunctions in accordance with the principles of equity"—a power that UroPep cannot invoke here. *Id.* at 1315, n.16.

*Telcordia Technologies, Inc. v. Cisco Sys., Inc.* and *Whitserve LLC v. Computer Package, Inc.* also involved patentees who were awarded ongoing royalties in the context of a denial of their motions for a permanent injunction. In *Telcordia*, the Court granted an ongoing royalty as part of its equitable powers in denying the patentee's motion for an injunction. 612 F.3d 1365, 1378-79 (Fed. Cir. 2010). In *Whitserve*, the district court rejected the patentee's request for an injunction and declined to award any post-verdict relief, but the Federal Circuit held that it did not adequately explain its analysis. 694 F.3d at 34-36. The Federal Circuit remanded for further proceedings. *Id.*

*Amando v. Microsoft Corp.* is even further afield from the present case. 517 F.3d 1353 (Fed.Cir. 2008). In *Amando*, a motion for an injunction had not only been filed; it had been granted (albeit subsequently dissolved). The Federal Circuit endorsed a higher royalty rate because Microsoft was bargaining for the right to continue to infringe in the face of an ***issued***

***injunction***, and in doing so the court distinguished other cases where the patentee had sought an injunction and been denied:

> This is not a case like *Paice* [*supra*], however, where the court's task was to assess an appropriate level of damages for ongoing infringement under circumstances in which an injunction was not warranted. Here, Microsoft *was* enjoined from further infringing activity yet was permitted to continue only by the virtue, and imprimatur, of the court-ordered stay.

517 F.3d at 1362 (emphasis in original). Similarly, *ActiveVideo Networks, Inc. v. Verizon Communs., Inc.* involved an issued injunction and a so-called "sunset royalty" for a limited period of time so that the defendant could introduce a design around. 694 F.3d 1312, 1342 (Fed. Cir. 2012) (vacating the injunction, but upholding the right to an enhanced "sunset royalty" rate). A sunset royalty in the face of an injunction (or the threat of an injunction) cannot exist here given UroPep's pre-trial abandonment of its claims under Section 283.

UroPep's district court case law is no more supportive of its position. *Bianco v. Globus Med., Inc.* is a trade secret case, but, unlike UroPep, it gets the law right: "In patent cases in which a permanent injunction is sought, the Federal Circuit has held that a district court may impose a reasonable royalty on the defendant for future use of the patented invention in lieu of an injunction." 53 F. Supp. 3d 929, 932 (E.D. Tex. 2014). No injunction has been (or could be) sought here. Many of UroPep's other cases expressly consider whether an injunction should issue as a prerequisite to awarding an ongoing royalty.[3] To the extent that others might be read to

---

[3] *See Internet Machs. LLC v. Alienware Corp.*, No. 6:10-cv-23, 2013 WL 4056282, at *19-20 (E.D. Tex. June 19, 2013) (premising its analysis on the court's finding that "a permanent injunction [was] unfounded"), *aff'd*, 575 F. App'x 895 (Fed. Cir. 2014) (Mem); *Affinity Labs of Tex., LLC v. BMW N. Am., LLC*, 783 F. Supp. 2d 891, 896 (E.D. Tex. 2011) (awarding ongoing royalty after denial of motion for an injunction); *Creative Internet Advert. Corp. v. Yahoo! Inc.*, 674 F. Supp. 2d 847, 852 (E.D. Tex. 2009) ("The Court has weighed the traditional four-factor test announced in *eBay* and finds that CIAC has failed to establish irreparable injury that could not be remedied through monetary relief") *Paice LLC v. Toyota Motor Corp.*, 609 F. Supp. 2d 620, 627-30 (E.D. Tex. 2009) (awarding ongoing royalty after denial of

stand for the proposition that district courts can award on ongoing royalty under Section 283 without evaluating an injunction, Lilly respectfully disagrees that they correctly apply the law. Even those cases, however, are unlike the present case because UroPep abandoned the right to invoke the Court's equitable powers under Section 283, tried the applicable royalty rate to the jury, and was in an unusually weak bargaining position after trial given the '124 patent's limited lifespan and limited ability to affect Lilly's sales of Cialis. UroPep's case law is simply inapposite.[4]

### D. The Court Should Exercise Its Discretion And Award No Ongoing Royalties Or, If It Does Award Royalties, Award Them At The Jury's Implied 2.8% Rate

The Court would be well within the bounds of its discretion to award no ongoing royalties. *See Whitserve*, 694 F.3d at 35 (a court "can exercise its discretion to conclude that no forward-looking relief is appropriate in the circumstances"). Indeed, UroPep has not even made a proper request for an ongoing royalty. The first place where UroPep suggested that a different rate might apply post-trial was in its proposed final judgment, which purported to "reserve[] jurisdiction to address any disputes regarding attorneys' fees and ongoing royalties." Dkt. 352-5, ¶ 4 (UroPep's proposed judgment). The Court did not adopt that provision. *Compare* Dkt. 355 (Final Judgment). Instead, the Court's Final Judgment "[a]ll other requests for relief set forth in

---

motion for an injunction), *abrogation recognized on other grounds by Spine Sols., Inc. v. Medtronic Sofamor Danek, Inc.*, 928 F. Supp. 2d 956, 961 (W.D. Tenn. 2011).

[4] Although none of UroPep's cases that supposedly support its position are on all fours with the present circumstances, the cases that apply Section 284 in the context of an accounting of post-verdict damages generally follow the royalty rate implied by the jury's verdict. For example, in *Finjin, Inc. v. Secure Computing Corp.*, the patentee sought to amend the judgment to cover a seventeen-month period between the jury's verdict and the entry of the permanent injunction. 626 F.3d 1197, 1213-14 (Fed.Cir. 2010). The district court awarded additional damages under Section 284 by multiplying the jury's royalty rate by the unaccounted sales for part of this seven-month period. The Federal Circuit upheld the procedure, but remanded because the patentee was entitled to damages for the entire period. *Mikohn Gaming Corp. v. Acres Gaming, Inc.* also awarded ongoing royalty damages at the jury's implied royalty rate in response to the patentee's motion to amend the judgment under Rule 59(e). No. CV-S-97-1383-EJW (LRL), 2001 WL 34778689, *18-*23 (D. Nev. Aug. 2, 2001).

plaintiff's complaint," including UroPep's request for ongoing royalties in its Complaint. Dkt. 360, Judgment, ¶ 6; *compare* Dkt. 1, Prayer for Relief. Yet UroPep's motion does not challenge the Judgment or try satisfy the standards of Rule 59(e) to amend the judgment. These defects are themselves enough to deny UroPep's motion.

Even if the Court entertains UroPep's motion, however, it still may deny any award of ongoing royalties. *Whitserve*, 694 F.3d at 35. The only post-verdict rights that UroPep could possibly offer to Lilly was a right to continue to advertise Cialis's BPH indication until the '124 patent expired. There would be no limitations on Lilly continuing to advertise Cialis generally (*i.e.*, without referencing BPH) and, as the BPH indication was already well known in the marketplace, the value of less than three months of additional BPH advertising would be minimal. Ex. 1, Jarosz Decl., ¶¶ 30-36. Indeed, UroPep and its expert, Dr. Vellturo, do not even attempt to analyze the value of including BPH in Lilly's advertisements for less than three months. Given the limited time horizon and limited rights that were on offer, as well as UroPep's failure to address the actual rights on offer or present any evidence of value and the fact that Lilly continues to enjoy exclusive rights to the tadalafil compound past the '124 patent's expiration, an award of no ongoing royalty would be well within the Court's discretion.

If, however, the Court chooses to award an ongoing royalty to UroPep, the manner in which UroPep elected to present and try its case to the jury make the Supreme Court's decision in *Dairy Queen, Inc. v. Wood* and its progeny binding authority. Where fact matters have already been determined by the jury, they are binding on the Court. *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 423-424 (5th Cir. 1988) (citing, *inter alia*, *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 479, (1962)). The jury adopted a 2.8% royalty rate; if the Court awards any ongoing royalty, it should do so at that rate.

## III. UROPEP'S METHOD FOR CALCULATING THE PROPER ROYALTY RATE IS DEEPLY FLAWED AND FAILS TO FOLLOW THE CASE LAW

If the Court disagrees with Lilly's assessment of the jury's verdict, however, and determines that it has the authority to craft its own, ongoing royalty rate for post-trial infringement, there is still no basis to apply an enhanced 15% percent royalty rate. Rather, given the limited bundle of rights that would be the subject of a post-trial hypothetical negotiation, the ongoing royalty rate should not exceed 3 percent.

### A. UroPep Does Not Follow Its Own Authority

As a starting point, UroPep's post-trial royalty rate analysis should be rejected because it fails to follow the very law that UroPep cites in its brief. UroPep asserts that the jury's royalty rate is typically used as the starting point for setting a post-trial royalty rate. Motion, p. 4 (citing *Internet Machs. LLC v. Alienware Corp.*, No. 6:10-cv-23, 2013 WL 4056282, at *19-20 (E.D. Tex. June 19, 2013) ("The appropriate starting point for determining post-judgment damages lies with the jury's verdict.")). UroPep also admits that any new royalty rate should be based on a hypothetical, post-trial negotiation. *Id.*, pp. 4-5 (quoting *ActiveVideo*, 694 F.3d at 1343; *Bianco*, 53 F. Supp. 3d at 933, and *Paice LLC v. Toyota Motor Corp.*, 609 F. Supp. 2d 620, 627-30 (E.D. Tex. 2009)). UroPep further acknowledges that the analysis of the post-trial negotiation typically includes a consideration of relevant *Georgia-Pacific* factors. *Id.*

UroPep, however, fails to apply any of these legal standards in deriving its proposed 15% royalty rate. Instead, UroPep has its expert, Dr. Vellturo, analyze only the alleged profitability of the accused dose of Cialis® (5 mg, once per day). Motion at pp. 5-11; Motion Ex. D, ¶¶ 3-8, 10-11. Nowhere does UroPep or Dr. Vellturo consider the other *Georgia-Pacific* factors or other relevant, post-trial considerations. Ex. 1, Jarosz Decl., ¶¶ 27-37.

UroPep and Dr. Vellturo also fail to take into account that the post-trial royalty negotiation should assume that the parties behave as reasonable businesspeople. *See ActiveVideo*, 694 F.3d at 1343. At the time of the hypothetical negotiation in April 2017, all of Lilly's alleged pre-trial infringement had been satisfied by the jury's award of $20 million dollars. Even if UroPep had not abandoned its claim for an injunction, it could not prevent Lilly from continuing to sell Cialis, only limit some of its advertising. And the '124 patent was less than three months from expiring. Dr. Vellturo, however, inexplicably bases his post-trial damages model solely on Lilly's alleged pre-trial profitability. Motion Ex. D, ¶¶ 10, 11. Neither UroPep nor Dr. Vellturo explain why any rational businessperson would use Lilly's pre-trial profitability to negotiate for Lilly's prospective, post-trial right to continue to advertise Cialis's BPH indication for less than three months. There is no explanation anywhere as to why reasonable businesspeople would look to historical data already covered by the jury's award to derive a multiplier to apply to the royalty applicable to future sales. Motion at p. 11.

Finally, UroPep's myopic focus on Lilly's alleged past profitability is based on a clearly erroneous proposition, namely, that "[b]oth experts based their calculation of the pre-trial royalty rate on Lilly's profitability from infringement between October 2014 ... and September 2016." Motion, p. 8; *see also id.*, p. 10. ***That is not true at all.*** Both experts considered far more than just Lilly's profitability in proposing their pre-trial royalty rates (identified by both experts as the "Income Approach"). Ex. 1, Jarosz Decl., ¶¶ 13-26. Dr. Vellturo and Mr. Jarosz also considered comparable licenses, cost and market approaches, and the *Georgia-Pacific* factors. *Id.* In fact, the jury's damages award indicates that it ***rejected*** both side's proposed royalty rates primarily based upon a profitability analyses (which were proposed as 1.6% for Mr. Jarosz and 12% for Dr. Vellturo). Rather, the jury's 2.8% implied royalty rate closely matches Mr. Jarosz's testimony

that a reasonable royalty would be no greater than the 3 percent royalty rate set in the IntelGenX Term Sheet, which was not tied to Lilly's profitability at all. *See* Ex. 3, Trial Tr., 1093:21-1096:18, 1137:13-1138:9; Ex. 4 (Trial Ex. 1174). The entire premise for UroPep's proposed 15% royalty rate is faulty.

**B. A Proper Analysis Supports A 2.8 Percent Royalty, As The Jury Found, And Should In No Event Exceed 3 Percent**

Rather, a consideration of all relevant factors indicates that an ongoing royalty rate at or below the jury's 2.8% rate is appropriate, and in no event should the post-trial royalty rate exceed 3%. Ex. 1, Jarosz Decl., ¶ 37.

As noted above, in the post-trial hypothetical negotiation, all of Lilly's prior alleged infringement had already been satisfied. The only rights UroPep was offering was the right for Lilly to continue to advertise Cialis for BPH for a little less than the next three months. *Id.*, ¶¶ 30-36. The value to Lilly of continuing to advertise Cialis for a three-month period in a well-informed and robust market, with prescriptions already written that cover the remaining lifetime of the '124 patent, was *de minimis*. *Id*. The rate of decline in consumer awareness for this brief period would be negligible; even if Lilly stopped advertising the BPH indication (and thus its alleged inducement of infringement), the market would still know of the indication. As shown at right, the projected decline in Cialis sales would be minimal. *Id.*, ¶ 32. The other *Georgia-Pacific* factors (which UroPep does not address) also support a post-trial royalty rate at or below the jury's implied rate. *Id.*, ¶¶ 35, 36.



UroPep and Dr. Vellturo simply ignore the actual circumstances of the April 2017 hypothetical negotiation or the rights that were being negotiated. Under a proper consideration of all of the relevant factors, however, including the parties' respective bargaining positions, there is no basis for an award of a 15% ongoing royalty. Rather, the actual circumstances of a hypothetical, post-trial negotiation in April 2017 if anything support a rate ***below*** the jury's implied royalty of 2.8%. And even if the rate is enhanced, it should not exceed 3%.

### C. There Is No Basis For Enhancement Under The *Read* Factors

Finally, UroPep asserts that Lilly's three months of post-trial sales constitutes willful infringement. The Court previously rejected UroPep's claim that this is an exceptional case, and it should also reject UroPep's claim that Lilly is a willful infringer post-trial.

The parties have not yet started post-trial briefing, and the '124 patent will likely expire before all post-trial briefing is completely resolved. Lilly believes that its defenses are meritorious and were bolstered by the trial record.

Moreover, UroPep's analysis of the six *Read* factors that it claims supports its willful infringement claim is deeply flawed (UroPep implicitly concedes that the remaining three *Read* factors do not help its claim). ***First,*** there is no support for a "copying" charge. Lilly started work on the BPH indication in May, 2001, before it had even heard of UroPep, and it launched the BPH indication before UroPep even filed the application that lead to the '124 patent. Ex. 6 (Trial Ex. 1018) at p. LILLY-BPH-00781229 – LILLY-BPH-00781230. Moreover, UroPep's prior patents admittedly did not cover Cialis for BPH.

***Second,*** as evidenced by the record in this case, Lilly has repeatedly expressed a good-faith belief that the '124 patent was both invalid and not infringed. ***Third,*** the Court previously rejected UroPep's claims of litigation misconduct and fully addressed the late discovery IntelGenX 5% term sheet during trial. Ex. 7, Tr. Trans., pp. 638:3-653:15. There is no evidence

whatsoever that Lilly knowingly withheld this document or that it had any material impact on the jury's assessment of damages (unlike the license assumed by the hypothetical negotiation, the 5% license was an *exclusive* license). ***Fourth***, the fact that Lilly is a successful company does not justify a finding of willfulness given its good-faith beliefs and conduct. ***Fifth***, although the jury found for UroPep, it rejected UroPep's damage claims and awarded royalties slightly below Lilly's proposed 3% royalty rate, suggesting that it did not agree that UroPep's patent was particularly valuable; moreover, substantial post-trial briefing that may yet take away UroPep's award. ***Sixth***, Lilly has simply been running its normal schedule of advertisements between the jury's verdict and the expiration of the '124 patent on July 9, 2017; there is no evidence whatsoever that it has expanded its business.

Simply put, UroPep has provided no basis for the Court to revisit its prior ruling that this is not an exceptional case. UroPep's attempt to have Lilly declared a willful infringer for conduct over the course of less than three months, while post-trial briefing is ongoing, should be rejected.

## IV. CONCLUSION

For all the foregoing reasons, UroPep's motion for an ongoing royalty should be denied.

Dated: June 2, 2017

By: <u>*/s/Jon B. Hyland*</u>

Victor D. Vital
Bar No. 00794798
Jon B. Hyland
Bar No. 24046131
BARNES & THORNBURG LLP
2100 McKinney Avenue, Suite 1250
Dallas, Texas 75201
Telephone: (214) 258-4200
vvital@btlaw.com
jon.hyland@btlaw.com

Todd G. Vare
Jeff M. Barron
BARNES & THORNBURG LLP

11 South Meridian Street
Indianapolis, Indiana 46204
Telephone: (317) 231-7735
todd.vare@btlaw.com
jeff.barron@btlaw.com

Felicia J. Boyd (admitted *pro hac vice*)
Anthony H. Son
BARNES & THORNBURG LLP
225 South Sixth Street, Suite 2800
Minneapolis, Minnesota 55402
Telephone: (612) 333-2111
felicia.boyd@btlaw.com
anthony.son@btlaw.com

*Attorneys for Defendant*
*Eli Lilly and Company*

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A). Pursuant to Fed. R. Civ. P. 5(d) and Local Rule CV-5(d) and (e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by email and/or fax, on this the 2nd day of June, 2017.

*/s/ Jon B. Hyland*
Jon B. Hyland

DMS 4958769v1